# IN THE UNITED STATES DISTRICT COURT
## FOR NORTHEN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| **JENNIFER CABEZAS**, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>**MR. COOPER GROUP, INC. and NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER**,<br>Defendants. | Case No. 3:23-CV-24530-N |

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND CORPORATE REPRESENTATIVE WITNESS FOR DEPOSITION

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...............................................................................................i

TABLE OF AUTHORITIES .......................................................................................ii

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND...................................... 2

III.  STANDARD OF REVIEW .............................................................................. 8

IV.   ARGUMENT .................................................................................................... 9

   A.  Plaintiffs Are Entitled to Discover Common Proof of the Elements of Their Claims for Purposes of Their Motion for Class Certification.................................................. 9

   B.  Mr. Cooper has not met its burden to show specifically how each discovery request is not relevant to class certification. ........................................................................... 13

      1.  RFP Nos. 15 & 18, Topics 8, 11, 13–14, 17, 24 & 29 ................................... 14

      2.  RFP No. 22 & Topic 12 ................................................................................ 17

      3.  RFP No. 23 & Topic 23 ................................................................................ 18

      4.  Topics 22, 24, and 26 ................................................................................... 19

V.    CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Ahmad v. Old Republic Nat. Title Ins. Co.,*
  690 F.3d 698 (5th Cir.2012) ......................................................................... 10

*Caldwell v. Freedom Mortgage Corp.,*
  Case No. 3:20-CV-2193-N, 2020 WL 8361933 (N.D. Tex. Sept. 22, 2020) ............. 10, 13, 14

*Comcast Corp. v. Behrend,*
  569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)......................................... 10

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  573 U.S. 258 (2014)...................................................................................... 9

*Hamm v. Acadia Healthcare Co.,*
  No. CV 20-1515, 2023 WL 12088740 (E.D. La. June 1, 2023) ............................... 9

*Harper v. City of Dallas, Texas,*
  No. 3:14-CV-2647-M, 2017 WL 3674830 (N.D. Tex. Aug. 25, 2017)...................... 8

*Harrell v. WebTPA Emp. Servs., LLC,*
  No. 3:24-CV-1158-L-BN, 2025 WL 2412849 (N.D. Tex. June 5, 2025) .................. 12

*In re Anthem, Inc. Data Breach Litig.,*
  327 F.R.D. 299 (N.D. Cal. 2018)..................................................................... 11, 12

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
  851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ 12

*In re Kosmos Energy Ltd. Sec. Litig.,*
  299 F.R.D. 133 (N.D. Tex. 2014) .................................................................... 10, 11

*In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.,*
  422 F. Supp. 3d 194 (D.D.C. 2019).................................................................. 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
  No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ................... 13

*Kostka v. Dickey's Barbecue Restaurants, Inc.,*
  No. 3:20-CV-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ................... 12

*Landmark Am. Ins. Co. v. Gargoyle Mgmt. Inc.,*
  No. 5:24-CV-038-H-BV, 2024 WL 5424423 (N.D. Tex. Nov. 19, 2024) .................. 8

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
  894 F.2d 1482 (5th Cir. 1990) ........................................................................ 8, 13

*Merrell v. 1st Lake Props., Inc.,*
    No. CV 23-1450, 2025 WL 1465528 (E.D. La. May 22, 2025) ............................................ 12

*Mullen v. Treasure Chest Casino, LLC,*
    186 F.3d 620 (5th Cir.1999) ................................................................................................. 10

*Nguyen v. Quality Sausage Co. LLC,*
    No. 4:19-CV-00150-P, 2020 WL 2425646 (N.D. Tex. May 12, 2020) .................................... 8

*Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung,*
    325 F.R.D. 578 (N.D. Tex. 2017) ..................................................................................... 8, 13

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.,*
    No. 12 C, 5490, 2013 WL 5348377 (N.D. Ill. Sept. 24, 2013) ............................................. 11

*Wilson v. Frontier Commc'ns Parent Inc.,*
    No. 3:24-CV-1418-L-BW, 2025 WL 2421373 (N.D. Tex. June 20, 2025) ............................. 12

## **Rules**

Federal Rule of Civil Procedure 12 ................................................................................................ 2

Federal Rule of Civil Procedure 23 ................................................................................ 9, 10, 11

Federal Rule of Civil Procedure 26 ............................................................................................... 8

Federal Rule of Civil Procedure 37 ........................................................................................... 8, 9

## **Other Authorities**

Manual for Complex Litigation, Fourth, § 21.141 ...................................................................... 10

## I.    INTRODUCTION

Discovery relevant to class certification has now been open for almost seven weeks. For months before this period even began, Plaintiffs have undertaken painstaking efforts to obtain the discovery to which they are entitled from Defendants Mr. Cooper Group, Inc. and Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper" or "Defendants"). Throughout this period, Plaintiffs have engaged in a lengthy meet-and-confer process in an attempt to reach agreement on certain document requests and corporate representative deposition topics relevant to class certification. As is typical in data breach cases, the requested documents and proffered deposition topics relate to the actions Mr. Cooper took before, during, and after the data breach to safeguard Plaintiffs' information. These requests and topics are tailored to seek documents and testimony that will provide common proof regarding Mr. Cooper's misconduct and the harm it caused to all class members, for purposes of establishing the requirements for class certification.

While the parties have reached compromise on some of Plaintiffs' document requests and deposition topics, Mr. Cooper has flat out rejected several, asserting that they are relevant only to the merits of Plaintiffs' claims and not at all to class certification. But, as the Fifth Circuit has recognized, Rule 23 requires district courts to conduct a "rigorous analysis" of the requirements for class certification, which necessarily requires some analysis of the merits of Plaintiffs' underlying claims. Each of Plaintiffs' document requests and deposition topics that Mr. Cooper has rejected is relevant to class certification and proportional to the needs of the case. Mr. Cooper has failed to meet its burden to establish it need not produce the documents or designate a corporate representative to testify on the topics. Plaintiffs' substantial, good-faith efforts to reach compromise have proven unsuccessful. Accordingly, Plaintiffs now seek an order compelling Mr. Cooper to comply with the requests and topics Mr. Cooper has rejected as irrelevant to class certification.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Court Denies Mr. Cooper's Motion to Dismiss and Sets Schedule for Class Certification

Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") on July 15, 2024, on behalf of a putative nationwide class of "[a]ll individuals residing in the United States whose PII was accessed and/or acquired as a result of the Data Breach announced by Mr. Cooper in or around November 2023" and various state subclasses. Doc. #70 ¶ 452. On September 13, 2024, Mr. Cooper filed a motion to dismiss the Complaint, in which Mr. Cooper asserted that Plaintiffs lacked Article III standing and sought dismissal of each claim under Federal Rule of Civil Procedure 12(b)(6). Doc. #78. On July 22, 2025, the Court granted Mr. Cooper's motion to dismiss in part and denied it in part. Doc. #124. The Court found Plaintiffs had established their Article III standing on most of their theories of relief. Id. at 12–20. The Court further found that Plaintiffs' Counts II and III (Plaintiffs' claims for breach of implied contract and negligence, respectively) survived dismissal under Rule 12(b)(6). Id. at 21–27. The Court deferred judgment as to Plaintiffs' claim for negligence per se and their state law claims. Id. at 32.

On July 25, 2025, this Court ordered that "[a]ll discovery except regarding class certification is stayed." Doc. #126. Plaintiffs immediately engaged Mr. Cooper in an extensive process of meeting and conferring to reach a compromise on a modified schedule for class certification but were unsuccessful. On August 4, 2025, Plaintiffs filed their Motion to Modify Class Certification Schedule ("Motion to Modify"). Doc. #127. On August 15, 2025, Mr. Cooper filed an opposition to Plaintiffs' Motion to Modify. Doc. #134. On August 19, 2025, after the Court

conducted a hearing on its expedited discovery dispute docket, the Court granted Plaintiffs' Motion to Modify. [1] Doc. #141.

### B. Plaintiffs' Requests for Production and Mr. Cooper's Responses

On January 17, 2025—well before the Court ruled on Mr. Cooper's motion to dismiss—Plaintiffs served their Second Set of Requests for Production of Documents ("RFPs") upon Mr. Cooper, attached hereto as Exhibit A-1 to Plaintiffs' Appendix in Support of Motion to Compel ("App."). Plaintiffs sought documents responsive to the following requests at issue for purposes of Plaintiffs' present Motion (collectively, the "Rejected Requests"):

- **RFP No. 15**: All Documents and Communications relating to internal or external assessments or audits (formal or informal) of Mr. Cooper's Data Security measures, including any findings, concerns, required actions, recommendations, conclusions, or follow-up, and the categories of Documents generated as a result.

- **RFP No. 18**: Documents sufficient to determine Your annual budget and how much You actually spent on Data Security for each year during the Relevant Time Period.[2]

- **RFP No. 22**: All Documents and Communications relating to any Data Security changes Mr. Cooper implemented or planned to implement as a result of the Data Breach.

- **RFP No. 23**: All Documents and Communications provided by Mr. Cooper to or exchanged between Mr. Cooper and any insurers, regulators, attorney generals' offices, or any other governmental entities regarding the Data Breach.

**Ex. A-1**, App. 016–018.

---

[1] Under the modified class certification schedule, Plaintiffs' Motion for Class Certification is due on November 24, 2025, and Class Certification Discovery closes on March 30, 2026. Doc. #141 at 1.

[2] "Relevant Time Period" is defined as January 1, 2019, through present.

In their initial responses served in February 2025, Mr. Cooper refused to answer any of Plaintiffs' RFPs at all but offered to meet and confer with Plaintiffs "concerning the timing and scope of this Request[s]." See Defendants' Objections and Responses to Plaintiffs' RFPs, attached as Exhibit A-2, App. 039, 042–43, 051–52. Despite conducting offered meet-and-confers, Mr. Cooper never produced anything as part of its initial responses to Plaintiffs' RFPs. After the Court's ruling on the Motion to Dismiss and Class Certification Scheduling Order, Plaintiffs and Mr. Cooper again met and conferred extensively. Declaration of Norman E. Siegel ("Siegel Decl.") at ¶¶ 11–15, App. 006–007. This process resulted in Plaintiffs tabling nine interrogatories and seven RFPs, leaving only 19 outstanding RFPs. See July–August 2025 Email Chain, attached hereto as Exhibit A-3, and February–September 2025 Email Chain, attached hereto as Exhibit A-4, App. 073–106.  On August 28, 2025 Mr. Cooper provided supplemental responses to the outstanding RFPs but refused to produce any documents responsive to the Rejected Requests, asserting those requests relate only to the merits and not class certification. See Mr. Cooper's Supplemental Objections and Responses dated August 28, 2025, attached hereto as Exhibit A-5, App. 121, 124–25, 133–35.

### C.    Plaintiffs' 30(b)(6) Deposition Notice and Mr. Cooper's Response

On August 1, 2025, Plaintiffs served Plaintiffs' Notice of Videotaped Deposition of Mr. Cooper ("30(b)(6) Notice"), which includes a list of topics pursuant to Rule 30(b)(6). Plaintiffs' 30(b)(6) Notice is attached hereto as Exhibit A-6. Plaintiffs' 30(b)(6) Notice requests that Mr. Cooper prepare, designate, and produce a witness or witnesses to testify on Mr. Cooper's behalf regarding the following topics (collectively, the "Rejected Topics"):

- **Topic No. 8**: Any cybersecurity audits conducted, and the audit results, performed by or on behalf of You between January 1, 2018 and October 31, 2024, including the names of the persons involved in the cybersecurity audits

- **Topic No. 11**: Cybersecurity standards that You comply with and any findings of non-compliance with those same standards: NIST Cybersecurity Framework, United States Cybersecurity and Infrastructure Security Agency's standards, Microsoft Threat Protection Intelligence Team's standards, Center for Internet Security's Critical Security Controls, and the data security standards set forth by the Federal Bureau of Investigation.

- **Topic No. 12**: The measures You or others on Your behalf have taken subsequent to the Data Breach, including those planned, but not yet started or completed, to remedy any potential vulnerabilities in Your server configurations, Computer Systems, networks, code, other electronic devices, storage devices, and software to prevent future data breaches and data disclosures.

- **Topic No. 13:** Your knowledge of data breaches in the financial and/or mortgage industries prior to the Data Breach and the basis for such knowledge.

- **Topic No. 14:** Your knowledge of prior and current complaints, lawsuits, administrative, or governmental actions or inquiries initiated against You concerning either the Data Breach or any other Security Incident experienced by You.

- **Topic No. 17:** Your penetration testing and/or ethical hacking exercises into your Computer System (whether conducted by internal Employees and/or any outside Vendor); the identity of those conducting such testing or exercises; and the focus and results of such testing or exercises from January 1, 2018, to present.

- **Topic No. 22**: Your statements to the public, your customers, and/or their clients about the security of PII in Your possession prior to and after the Data Breach, including statements in Your Privacy Policy and/or client agreements.

- **Topic No. 23**: Your communications to any and all law enforcement agencies and/or federal or state regulators regarding the facts and circumstances surrounding the Data Breach.

- **Topic No. 24**: Your disclosures to Rocket Mortgage during its proposed acquisition of You regarding: the state of Your data security, data security budgeting and spending; the Data Breach; valuation of liabilities related to the Data Breach; and remediation efforts stemming from the Data Breach.

- **Topic No. 26**: Communications between You and any third party concerning the Data Breach, including the identification or number of individuals whose PII was potentially exposed during the Data Breach, the status of any investigation, and the payment of any assessment, monies, or damages resulting from the Data Breach.

- **Topic No. 27:** Your use of customers' data for profit.

- **Topic No. 28**: Your budgets for information security, risk assessment, and third-party consultants for data security, including any increase in the budget (whether through increase in money or personnel) following the Data Breach.

- **Topic No. 29**: Your policy for the retention or deletion of the PII of consumers following the payment of mortgage loans by consumers and/or the transfer of the servicing rights and obligations of mortgage loans to another loan servicer.

**Ex. A-6**, App. 159–162.

On August 19, 2025, Mr. Cooper served its objections to the 30(b)(6) Notice via letter. See August 19, 2025, Letter, attached as Exhibit A-7. In response to each of the Rejected Topics, Mr. Cooper refused to prepare and designate a corporate representative, asserting numerous objections including that each seeks "information that is not related to class certification[.]" Ex. A-7, App. 171–175. On August 26, 2025, Mr. Cooper reiterated its position that it "will not prepare a corporate representative witness to testify as to Topic Nos. 8, 11–15, 17, 22–24, 26, 28, and 29 because, "[c]onsistent with Mr. Cooper's prior objections, the discovery sought by these Topics concern only the merits of Plaintiff's claims and/or are otherwise irrelevant." August 26, 2025, Letter, attached as Exhibit A-8, App. 179.

### D.        Plaintiffs' Efforts to Resolve the Disputes

Since July 29, 2025,[3] Plaintiffs extensively corresponded with Mr. Cooper and met and conferred with Mr. Cooper multiple times in an attempt to reach a compromise that would allow Plaintiffs to obtain documents responsive to the Rejected Requests and an agreement from Mr. Cooper to prepare and designate a corporate witness to testify on the Rejected Topics. See Siegel Decl. at ¶¶ 11–13, App. 006; Ex. A-3, App. 074–78; Ex. A-4, App. 088–091. The Parties conducted additional meet and confers via videoconference on August 19, 2025 and August 20, 2025. Ex. A-4, App. 088–091. Each session lasted approximately one hour. Again, while some incremental progress was made, the Parties have a fundamental dispute over the scope of discovery which results in Mr. Cooper refusing to respond to certain document requests or prepare a witness for certain deposition topics. Siegel Decl. at ¶ 12, App. 006. Mr. Cooper has consistently refused to produce any documents responsive to the Rejected Requests or a corporate witness to testify regarding the Rejected Topics, asserting that those requests and topics relate only to the merits and not class certification.  See Siegel Decl. at ¶¶ 11–15, App. 006–007. At the same time, Mr. Cooper has refused to stipulate to any element of Rule 23, even numerosity. See Ex. A-3, App. 078 (stating that Plaintiffs would "like to discuss whether Mr. Cooper is willing to stipulate to any element of Rule 23 or predicate facts relating to class certification").

On September 3, 2025, counsel for Plaintiffs informed counsel for Mr. Cooper of Plaintiffs' intention to file the present Motion and once again asked Mr. Cooper to provide a privilege log,[4] produce documents responsive to the Rejected Requests, and prepare and designate a corporate

---

[3] Plaintiffs' efforts to obtain discovery in general extend far before July 2025. *See* Plaintiffs' Opposition to Mr. Cooper's Motion to Stay Discovery, Doc. #119, at 6–13.

[4] Mr. Cooper has represented to Plaintiffs that it "expect[s] to produce" a privilege log this week. *See* **Ex. A-4**, App. 084.

representative to testify on the Rejected Topics. Siegel Decl. at ¶ 14, App. 007; Ex. A-4, App. 085. On September 5, 2025, Mr. Cooper's counsel agreed to partially comply with document request 17 and deposition topic 15 but "agree[d] that it appears we are at an impasse as to the remaining topics and requests." Siegel Decl. at ¶ 15, App. 007; Ex. A-4, App. 082. Mr. Cooper otherwise continues to refuse to comply with the Rejected Requests and Topics. Siegel Decl. at ¶ 15, App. 007. Plaintiffs now bring the instant Motion.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 26(b)(1) allows for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Under Rule 37(a)(3)(B)(ii) and (iv), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a corporation or other entity fails to make a designation under Rule 30(b)(6)" or if "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." "Under Fifth Circuit law, the party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 593 (N.D. Tex. 2017) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). A party filing a motion to compel does not bear "the burden to show relevance and proportionality in the first instance." Id. at 594 (emphasis added) (citing Fed. R. Civ. P. 26(g)(1)). Accord *Landmark Am. Ins. Co. v. Gargoyle Mgmt. Inc.*, No. 5:24-CV-038-H-BV, 2024 WL 5424423, at *3 (N.D. Tex. Nov. 19, 2024); *Nguyen v. Quality Sausage Co. LLC*, No. 4:19-CV-00150-P, 2020 WL 2425646, at *2 (N.D. Tex. May 12, 2020); *Harper v. City of Dallas, Texas*, No. 3:14-CV-2647-M, 2017 WL 3674830, at *5 (N.D. Tex. Aug. 25, 2017). If such a motion is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that

conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Rule 37(a)(5)(A).

## IV.    ARGUMENT

This Court should compel Mr. Cooper to produce documents responsive to the Rejected Requests and prepare a corporate witness to testify regarding the Rejected Topics. Plaintiffs' Rejected Requests and Topics seek to obtain the common proof Plaintiffs will need to establish predominance at class certification. Mr. Cooper has failed to meet its burden to establish the Rejected Requests and Topics are not relevant to class certification or disproportional to the needs of the case. Accordingly, the Court should grant Plaintiffs' Motion in its entirety.

### A.    Plaintiffs Are Entitled to Discover Common Proof of the Elements of Their Claims for Purposes of Their Motion for Class Certification.

Each of the Rejected Requests seeks documents directly relevant to class certification because Plaintiffs are entitled to present evidence of common proof of each element of Plaintiffs' claims at class certification. To successfully certify the putative class in this matter, Plaintiffs must establish "that their proposed class satisfies each requirement of Federal Rule of Civil Procedure 23[.]" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). "To identify common questions, courts typically examine the parties' claims and defenses, identify the types of proof the parties expect to present, and decide the extent to which there is a need for individual, as opposed to common, proof. To decide typicality, courts determine whether the named plaintiff's claim arises from the same course of events and involves legal arguments similar to those of each class member." *Hamm v. Acadia Healthcare Co.*, No. CV 20-1515, 2023 WL 12088740, at *4 (E.D. La. June 1, 2023) (emphasis in original) (citing Manual for Complex Litigation, Fourth, § 21.141, Precertification Discovery into the Rule 23(a) Requirements).

To satisfy predominance under the "demanding legal standard under Rule 23(b)(3)", "'common issues must constitute a significant part of the individual cases'", and "the factual and legal issues must be capable of determination 'on a class-wide basis using class-wide proof." *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 150 (N.D. Tex. 2014) (emphasis added) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir.1999); *Ahmad v. Old Republic Nat. Title Ins. Co.*, 690 F.3d 698, 703–04 (5th Cir.2012)).  Accordingly, the "certification analysis 'will frequently entail 'overlap with the merits of the plaintiff's underlying claim,' as it 'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Id. (emphasis added) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013)); see also *Caldwell v. Freedom Mortgage Corp.*, Case No. 3:20-CV-2193-N, 2020 WL 8361933, at *3 (N.D. Tex. Sept. 22, 2020) ("Because Plaintiffs' theory of damages must reasonably be connected to its theory of liability, Plaintiffs' are entitled to some level of discovery regarding those damages. Some discovery when moving for class certification will necessarily overlap with merits discovery . . .  Plaintiffs have plausibly asserted a connection between their requests for production and questions regarding class certification.").5

Absent a stipulation by a defendant to any of the Rule 23 elements,6 if a plaintiff "offers no quality proof on predominance" but rather "outlines the elements of its claims and defenses at

---

5 In *Caldwell*, this Court granted the plaintiff's motion to compel class discovery, including a request to "[p]roduce all documents concerning whether charging Pay-to-Pay Fees to FHA Borrowers complies with regulations or rules, of any type, imposed by HUD or the FHA" and an interrogatory asking that "If any policy, practice, or procedure identified in Interrogatory Nos. 11 and 12 changed during the Relevant Time Period, explain in detail (a) who was involved in considering, deciding to adopt, or implementing the change; (b) when the change was made; (c) how the change was implemented internally and by notifying your customers; and (d) why you changed the policy, practice, or procedure. Your response should identify all documents relating to any change identified in the response." No. 3:19-cv-02193-N, Doc. #36.

6 Mr. Cooper has refused to stipulate to any Rule 23 element or predicate facts. Mr. Cooper cannot turn around and deny Plaintiffs discovery relevant to these elements. *See Whiteamire Clinic, P.A.,*

issue and generically asserts that such issues 'will be' established through common proof [at a later stage in the proceedings] or are 'subject to generalized proof,'" then the plaintiff will not establish predominance under Rule 23(b)(3). *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 152 (N.D. Tex. 2014). On the other hand, if plaintiffs "identify common evidence that will be used to prove each of these issues" and "list key documents and deposition testimony that would be used to show that '[defendant] aggregated millions of people's [personal information] ... but failed to follow its own policies or reasonable safeguards to protect the [personal information], resulting in [defendant's] Data Breach", then such plaintiffs will satisfy the predominance requirement. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314–15 (N.D. Cal. 2018) (emphasis added) (certifying breach of contract, negligence, and statutory claims across multiple states arising from a data breach, noting that "the common issues turn on a common course of conduct by defendant"); see also *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 246 (D.D.C. 2019) (finding that "[f]or the purposes of class certification…whether defendants' alleged conduct constitute a deceptive act under each state's consumer protection statute is a common question susceptible to common proof", citing "ample common evidence that the challenged action was deceptive" and listing evidence submitted by Plaintiffs). Accordingly, Plaintiffs intend to provide common proof of their claims at the class certification stage.

    Here, as in most data breach cases, Plaintiffs assert negligence and implied breach of contract causes of action, among other claims. Courts analyzing predominance in data breach class actions asserting negligence and/or implied contract claims analyze whether Plaintiffs can provide

---

*Inc. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) ("the Court cannot permit [defendant] on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified" unless defendant "agreed to give up its challenges as to commonality, numerosity, and typicality").

common proof of the Defendants' conduct "before, during, and following the data breach, and the resulting injury to each class member from that conduct." See *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012); *Wilson v. Frontier Commc'ns Parent Inc.*, No. 3:24-CV-1418-L-BW, 2025 WL 2421373, at *5 (N.D. Tex. June 20, 2025), report and recommendation adopted sub nom. No. 3:24-CV-01418-L, 2025 WL 2419872 (N.D. Tex. Aug. 20, 2025) (certifying a class when "Plaintiffs identif[ied] common key issues such as whether Frontier had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether that duty was breached."); *Harrell v. WebTPA Emp. Servs., LLC*, No. 3:24-CV-1158-L-BN, 2025 WL 2412849, at *4 (N.D. Tex. June 5, 2025), report and recommendation adopted sub nom., No. 3-24-CV-01264, 2025 WL 2410300 (N.D. Tex. Aug. 20, 2025) (finding predominance in a data breach case: "in this case, key predominating questions are whether Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether Defendants breached that duty"); *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-CV-03424-K, 2022 WL 16821685, at *7, 9 (N.D. Tex. Oct. 14, 2022), report and recommendation adopted, No. 3:20-CV-03424-K, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022) (finding predominance satisfied when "Plaintiffs' claim center[ed] around a purportedly implied contract" and "the allegation that [defendant] breached this implied contract by failing to provide reasonable protections for [plaintiffs'] payment information"); accord *Merrell v. 1st Lake Props., Inc.*, No. CV 23-1450, 2025 WL 1465528, at *5 (E.D. La. May 22, 2025); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314 (N.D. Cal. 2018); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020), aff'd, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022).

Plaintiffs thus intend to present common proof of Mr. Cooper's conduct before, during, and after the data breach to support Plaintiffs' allegations of Mr. Cooper's negligence and breach of implied contract, as well as Plaintiffs' state law claims.  To provide such proof at class certification, Plaintiffs must first discover it from Mr. Cooper.

### B.    Mr. Cooper has not met its burden to show specifically how each discovery request is not relevant to class certification.

"Under Fifth Circuit law, the party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 593 (N.D. Tex. 2017) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)); see also *Caldwell*, 2020 WL 8361933, at *1. Mr. Cooper has failed to specifically show how each of the Rejected Requests and Topics are not relevant to class certification or otherwise objectionable.

The common legal and factual questions woven throughout Plaintiffs' claims for negligence, breach of implied contract, negligence per se, and breach of numerous state statutes are: (1) did Mr. Cooper have a duty to implement and maintain reasonable security and privacy measures to safeguard Plaintiffs' and Class Members PII; (2) did Mr. Cooper fail to identify foreseeable security risks applicable to all class members; (3) did Mr. Cooper breach its duties with respect to the security and privacy of Plaintiff and Class Members' PII based on industry standards; (4) did Mr. Cooper conceal that it did not reasonably or adequately secure Plaintiff and Class Members' PII; and (5) did Mr. Cooper promptly and accurately notify Plaintiffs and Class Members of the Data Breach.  See generally, Doc. #70 at Count II, ¶¶ 472–481 (Breach of Implied Contract), Count III, ¶¶ 482–495 (Negligence), Count IV, ¶¶ 496–509 (Negligence Per Se), and Counts IX–XXII, ¶¶ 552–769 (state law claims). To establish predominance for class certification, Plaintiffs will have to provide common proof that common answers exist for each of these

13

questions. Each of the Rejected Requests and Topics seek such common proof. Accordingly, the Court should grant Plaintiffs' Motion.

### 1.    RFP Nos. 15 & 18, Topics 8, 11, 13–14, 17, 24 & 29

Plaintiffs' RFP Nos. 15 and 18 and Topics 8, 11, 13–14, 17, 24, and 29 all seek to discover common proof regarding Mr. Cooper's data security practices, whether they complied with industry standards, whether they were applicable to all class members, and whether Mr. Cooper failed to identify foreseeable security risks present for all class members. This is the exact type of discovery this Court compelled in *Caldwell* as relevant to class certification. 2020 WL 8361933, at *3 ("Plaintiffs' interrogatories and requests for production here seek information regarding [Defendant's] official policies and procedures surrounding the [violation].")

RFP No. 15 seeks documents and communications "relating to internal or external assessments or audits (formal or informal) of Mr. Cooper's Data Security measures, including any findings, concerns, required actions, recommendations, conclusions, or follow-up, and the categories of Documents generated as a result." Ex. A-1, App. 016–017. Topic 8 similarly requests testimony regarding "[a]ny cybersecurity audits conducted, and the audit results, performed by or on behalf of You between January 1, 2018, and October 31, 2024, including the names of the persons involved in the cybersecurity audits." Ex. A-6, App. 159. Topic 17 relatedly requests "Your penetration testing and/or ethical hacking exercises into your Computer System (whether conducted by internal Employees and/or any outside Vendor); the identity of those conducting such testing or exercises; and the focus and results of such testing or exercises from January 1, 2018, to present." Ex. A-6, App. 160. And Topic 24 requests testimony regarding "Your disclosures to Rocket Mortgage during its proposed acquisition of You regarding…the state of Your data security[.]" Ex. A-6, App. 161.

RFP No. 18 requests "Documents sufficient to determine Your annual budget and how much You actually spent on Data Security for each year during the Relevant Time Period." Ex. A-1, App. 017. Topic 28 likewise seeks testimony regarding "Your budgets for information security, risk assessment, and third-party consultants for data security, including any increase in the budget (whether through increase in money or personnel) following the Data Breach." Ex. A-6, App. 162.

Topic 11 seeks testimony regarding: "Cybersecurity standards that You comply with and any findings of non-compliance with those same standards: NIST Cybersecurity Framework, United States Cybersecurity and Infrastructure Security Agency's standards, Microsoft Threat Protection Intelligence Team's standards, Center for Internet Security's Critical Security Controls, and the data security standards set forth by the Federal Bureau of Investigation." Ex. A-6, App. 159.

Topic 13 seeks testimony regarding "Your knowledge of data breaches in the financial and/or mortgage industries prior to the Data Breach and the basis for such knowledge[,]" and Topic 14 similarly seeks testimony regarding: "Your knowledge of prior and current complaints, lawsuits, administrative, or governmental actions or inquiries initiated against You concerning either the Data Breach or any other Security Incident experienced by You." Ex. A-6, App. 160. Finally, Topic 29 seeks testimony regarding Mr. Cooper's "policy for the retention or deletion of the PII of consumers following the payment of mortgage loans by consumers and/or the transfer of the servicing rights and obligations of mortgage loans to another loan servicer." Ex. A-6, App. 162.

Each of these requests and topics seek to discover common proof relating to Plaintiffs' allegations in the Complaint. Plaintiffs allege the applicable standard of care that should have been followed by Mr. Cooper, including "educating all employees; strong passwords; multi-layer

15

security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limiting which employees can access sensitive data" and "installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points."  Doc. #70 ¶¶ 429–30.

Plaintiffs also allege that Mr. Cooper failed to comply with these and other industry standards and failed to identify security risks, including in the following ways: (1) "Mr. Cooper improperly failed to encrypt Plaintiffs' and Class Members' PII, or used deprecated encryption protocols, failed to delete such PII after it no longer needed to be retained, stored it in a vulnerable, internet-accessible environment, failed to deploy and calibrate up-to-date authentication measures for user credentials, failed to apply the requisite 'patches' to its critical software to eliminate known vulnerabilities, and failed to monitor traffic on its network in an effort to detect malicious activity," Id. at ¶ 375; (2) "Mr. Cooper's systems were missing multi-factor authentication ("MFA") all through calendar year 2022.  MFA has been an industry standard in the financial sector since 2018," Id. at ¶ 382; (3) Mr. Cooper failed to address compromised credentials, Id. at ¶ 385, and (4) Mr. Cooper failed to address common vulnerabilities including "CVE-2014-3566, 2016-0204 (IBM cloud orchestrator), 2016-0800 (invalid or deprecated certs), 2016-2000 (asset management system for software that runs on HP servers)". Id. at ¶ 390. Plaintiffs further allege that Mr. Cooper failed to meet "the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0…and the Center for Internet Security's Critical Security

Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness." Id. at ¶ 431.

These requests seek to discover common proof to support these specific allegations and illuminate Mr. Cooper's course of conduct applicable to all class members, including whether Mr. Cooper provided data security consistent with industry standards and whether it was aware of any risks and recommendations for its data security practices. Plaintiffs' requests thus seek the common proof Plaintiffs must provide to certify the class, and this Court should grant Plaintiffs' Motion.

### 2.      RFP No. 22 & Topic 12

RFP No. 22 requests documents and communications "relating to any Data Security changes Mr. Cooper implemented or planned to implement as a result of the Data Breach." Ex. A-1, App. 018. Likewise, Topic 12 requests testimony regarding: "[t]he measures You or others on Your behalf have taken subsequent to the Data Breach, including those planned, but not yet started or completed, to remedy any potential vulnerabilities in Your server configurations, Computer Systems, networks, code, other electronic devices, storage devices, and software to prevent future data breaches and data disclosures." Ex. A-6, App. 160. Like the other requests and topics discussed above, these seek common proof regarding whether Mr. Cooper's data security practices complied with industry standards and whether Mr. Cooper failed to identify foreseeable security risks present for all class members. But this request also seeks common proof regarding the seriousness of the breach and the harm common to all class members, and Mr. Cooper's actions following the data breach.

Plaintiffs cite communications from Mr. Cooper to class members which stated that after the Data Breach, Mr. Cooper "took immediate steps to lock down our systems in order to keep your data safe." Doc. #70 ¶ 366. But Mr. Cooper "failed to indicate any [further] measures they

had taken to mitigate the harm beyond 'locking down [their] systems, changing account passwords, and restoring systems.'" Id. at ¶ 369. Mr. Cooper also remained careless with PII even after the Data Breach. See id. at ¶¶ 396–404.

This request thus seeks to discover common proof regarding the scope of the breach and the harm common to all class members, even after the Data Breach, and Mr. Cooper's efforts to mitigate such harm. Accordingly, this Court should grant Plaintiffs' Motion.

### 3.    RFP No. 23 & Topic 23

RFP No. 23 requests documents and communications "provided by Mr. Cooper to or exchanged between Mr. Cooper and any insurers, regulators, attorney generals' offices, or any other governmental entities regarding the Data Breach." Ex A-1, App. 018. Likewise, Topic 23 seeks testimony regarding "[y]our communications to any and all law enforcement agencies and/or federal or state regulators regarding the facts and circumstances surrounding the Data Breach." Ex. A-6, App. 161. Like the other Disputed Requests and Topics, these seek common proof regarding whether Mr. Cooper's data security practices complied with industry standards and whether Mr. Cooper failed to identify foreseeable security risks present for all class members. But this request also seeks common proof regarding the number of individuals affected and the harm caused to those individuals.

Plaintiffs allege that Mr. Cooper filed a Form 8-K with the SEC disclosing the cyberattack. Doc. #70 ¶ 368. Likewise, Mr. Cooper filed a regulatory notice with the Maine Attorney General's office indicating that over 14 million customers' data was compromised. Id. at ¶ 371. To the extent Mr. Cooper further communicated with regulators, attorneys general, other governmental entities, or insurers, Mr. Cooper's communications are likely to provide common proof of Plaintiffs' claims, including the identities of the class members affected and the harm common to all class

18

members.   This proof is directly relevant to class certification, and thus this Court should grant
Plaintiffs' Motion.

### 4.    Topics 22, 24, and 26

Topic 22 requests testimony regarding: "Your statements to the public, your customers,
and/or their clients about the security of PII in Your possession prior to and after the Data Breach,
including statements in Your Privacy Policy and/or client agreements." Ex. A-6, App. 161. Topic
24 requests testimony regarding disclosures regarding the "valuation of liabilities related to the
Data Breach; and remediation efforts stemming from the Data Breach." Id. And Topic 26 requests
"Communications between You and any third party concerning the Data Breach, including the
identification or number of individuals whose PII was potentially exposed during the Data Breach,
the status of any investigation, and the payment of any assessment, monies, or damages resulting
from the Data Breach." Ex. A-6, App. 162.

These requests seek common proof regarding Mr. Cooper's actions during and after the
data breach, the number of individuals affected by the breach, the types of harm caused to those
individuals, and the risk of future harm to all class members.

Plaintiffs cite communications from Mr. Cooper to class members which stated that after
the Data Breach, Mr. Cooper "took immediate steps to lock down our systems in order to keep
your data safe." Doc. #70 ¶ 366.   But as discussed above regarding RFP No. 22 and Topic 12,
Mr. Cooper "failed to indicate any [further] measures they had taken to mitigate the harm beyond
'locking down [their] systems, changing account passwords, and restoring systems.'" Id. at ¶ 369.
Mr. Cooper admitted that "customer data was exposed" and PII "was obtained" during the data
breach.  Id. at ¶¶ 370–71. Mr. Cooper sent a notice of data breach and otherwise took steps to
advise customers and regulators of the breach. Id. at ¶¶ 372–73.  Mr. Cooper also remained careless
with PII even after the Data Breach.  See id. at ¶¶ 396–404.

These requests thus seek common proof of Plaintiffs' claims, including whether Mr. Cooper's statements were consistent to all class members, the identities of the class members affected, the number of class members affected, and the actual and prospective harm common to all class members. This proof is directly relevant to class certification, and thus this Court should grant Plaintiffs' Motion.

## V.    CONCLUSION

For the reasons set forth herein, Mr. Cooper has failed to establish that the Rejected Requests and Topics are not relevant to class certification or not proportional to the needs of the case.  Accordingly, this Court should grant Plaintiffs' Motion and compel Mr. Cooper to respond to the Rejected Requests and to prepare a corporate representative witness to testify on the Rejected Topics.

Dated: September 11, 2025            Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: 866-252-0878
gklinger@milberg.com

John A. Yanchunis
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Tel: (813) 275-5272
jyanchunis@forthepeople.com

Norman E. Siegel (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com

*Interim Co-Lead Counsel for Plaintiffs*