**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| JENNIFER CABEZAS, individually and on behalf of others similarly situated,<br>　　　　　　　Plaintiffs,<br>　　v.<br>MR. COOPER GROUP, INC. and NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,<br>　　　　　　　Defendants. | Case No. 3:23-CV-2453-N |

**MR. COOPER'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
<u>CORPORATE REPRESENTATIVE WITNESS FOR DEPOSITION</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................. 2

LEGAL STANDARD .............................................................................................. 6

ARGUMENT ........................................................................................................... 6

I.    Merits Discovery and Sweeping Requests are Improper and Disproportionate to the Needs of the Case at the Class Certification Stage. ...................................... 6

II.   The Motion to Compel Should be Denied as to Each of the Contested Requests and Topics. ............................................................................................................ 9

      A.    Request Nos. 15 and 18, and Topic Nos. 8, 11, 13-14, 17, and 19 ......................... 9

            1.    Request No. 15 and Topic Nos. 8 and 17 ................................................. 10

            2.    Topic No. 11 ............................................................................................. 12

            3.    Request No. 18 and Topic No. 28 ............................................................ 14

            4.    Topic No. 24 ............................................................................................. 15

            5.    Topic Nos. 13 and 14 ............................................................................... 16

            6.    Topic No. 29 ............................................................................................. 16

      B.    Request No. 22 and Topic No. 12 ............................................................. 17

      C.    Request No. 23 and Topic No. 23 ............................................................. 18

      D.    Topic Nos. 22 and 26 ................................................................................ 20

CONCLUSION ....................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..................................................................................................7

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018).............................................................................7

*Brandner v. Abbott Lab'ys, Inc.*,
    2011 WL 13202987 (E.D. La. Sept. 8, 2011).......................................................13

*Caldwell v. Freedom Mortg. Corp.*,
    2020 WL 8361933 (N.D. Tex. Sept. 22, 2020).....................................................10

*Carpenter v. Davis*,
    424 F.2d 257 (5th Cir. 1970) .................................................................................20

*Carpenter v. Twin City Fire Ins. Co.*,
    2024 WL 947589 (N.D. Tex. Mar. 4, 2024)................................................9, 12, 18

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ...................................................................................7

*Gene & Gene, L.L.C. v. BioPay, L.L.C.*,
    624 F.3d 698 (5th Cir. 2010) ...................................................................................7

*Gondola v. USMD PPM, LLC*,
    223 F. Supp. 3d 575 (N.D. Tex. 2016) ...............................................................9, 18

*Hamm v. Acadia Healthcare Co.*,
    2023 WL 12088740 (E.D. La. June 1, 2023).........................................................7

*Jane Doe (E.M.B.) v. G6 Hospitality, LLC*,
    2025 WL 2556104 (E.D. Tex. Feb. 3, 2025) ..........................................................6

*Landmark Am. Ins. Co. v. Gargoyle Mgmt. Inc.*,
    2024 WL 5424423 (N.D. Tex. Nov. 19, 2024)...................................................9, 18

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) ...................................................................................7

*In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*,
    422 F. Supp. 3d 194 (D.D.C. 2019).........................................................................7

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
  894 F.2d 1482 (5th Cir. 1990) ................................................................................6

*Mitchell v. Toyota of Dallas,*
  2024 WL 2946580 (N.D. Tex. June 10, 2024) ...................................................21

*A.A. ex rel. P.A. v. Phillips,*
  2023 WL 334010 (5th Cir. Jan. 20, 2023) .........................................................20

*Samsung Elecs. Am. Inc. v. Yang Kun „Michael" Chung,*
  325 F.R.D. 578 (N.D. Tex. 2017) .........................................................................6

*St. Gregory Cathedral Sch. v. LG Elecs., Inc.,*
  2013 WL 12214144 (E.D. Tex. Nov. 25, 2013) .................................10, 11, 19

*Stewart v. Winter,*
  669 F.2d 328 (5th Cir. 1982) ............................................................................8, 9

*Taylor-Vick v. City of Midland,*
  2009 WL 10703673 (W.D. Tex. June 25, 2009) .............................................15, 19

*Tex. Grain Storage, Inc. v. Monsanto Co.,*
  2008 WL 11411844 (W.D. Tex. Apr. 24, 2008).................................................7

*Transamerican Refin. Corp. v. Dravo Corp.,*
  130 F.R.D. 70 (S.D. Tex. 1990)..........................................................................20

*Vine v. PLS Fin. Servs., Inc.,*
  2020 WL 408983 (E.D. Tex. Jan. 24, 2020).......................................................6

**Other Authorities**

Fed. R. Civ. P. Rule 23 ................................................................................... *passim*

Fed. R. Civ. P. Rule 26 ................................................................................... *passim*

Fed. R. Civ. P. Rule 30 .................................................................................3, 13

Fed. R. Civ. P. Rule 34 .........................................................................................9

Manual for Complex Litigation ...........................................................................8

## INTRODUCTION

The Court's July 25 Scheduling Order ("Scheduling Order") stayed all discovery except that relating to class certification. The Scheduling Order recognized the efficiencies and cost savings to bifurcating discovery in a sprawling class action lawsuit like this one, that seemingly alleges every claim under the sun. Yet, immediately following the Court's Scheduling Order and still since, Plaintiffs have attempted to resist compliance, repeatedly seeking discovery with no bearing on class certification, and even discovery with no bearing on this case. Plaintiffs' Motion to Compel ("Motion") seeks to thwart the judicial and litigation economy that the Scheduling Order embraces and should be denied.

Mr. Cooper has already provided voluminous discovery necessary for class certification, including discovery on the circumstances of the cyber-attack on Mr. Cooper's systems beginning on or about October 30, 2023 that is the subject of this litigation (the "Ransom Attack"), including (i) how it occurred; (ii) how Mr. Cooper became aware of it; (iii) the attack vector; (iv) how Mr. Cooper responded to the Ransom Attack; (v) the circumstances concerning the exfiltration of customer data and details of that data; (vi) how Mr. Cooper notified its customers of the Ransom Attack; (vii) Mr. Cooper's information security standards, policies and procedures in effect at the time; and (viii) detailed information about the types, volume, and breakdown across the putative class of the data exfiltrated by the criminal actors. Plaintiffs' Motion does not articulate why the discovery they already possess is insufficient to meet their class certification burdens, yet still seeks to compel "all documents and all communications" on a variety of different topics that, at best, go to merits issues. The only justification Plaintiffs offer for each discovery request ("Request") is that they are entitled to "common proof" of all of their claims. But that oft-repeated refrain fails to carry their burden to show that the discovery is (i) relevant to class certification,

and (ii) overcome Mr. Cooper's objections and showing that the discovery—and particularly the "all documents and communications" formulations—are overly broad, unduly burdensome, and disproportionate to the needs of class certification discovery. This Court should not allow Plaintiffs to continue seeking free-ranging merits discovery before a class is certified, in contravention of the Scheduling Order.

## FACTUAL AND PROCEDURAL BACKGROUND

The first of these consolidated class actions was filed in this Court on November 3, 2023. ECF No. 1. That complaint asserted then (nearly two years ago) that a putative nationwide class action could be certified and maintained against Mr. Cooper. *Id*. at ¶ 58. Plaintiffs filed their Consolidated Class Action Complaint on July 15, 2024, and again maintained that class certification could be achieved with "no difficulty." ECF No. 70 ("Compl.") ¶ 461.

On July 22, 2025, the Court issued its order granting in part and denying in part Mr. Cooper's Motion to Dismiss. *See* ECF No. 124. Three days later, on July 25, the Court entered the Scheduling Order, which states that "[a]ll discovery except regarding class certification is stayed." ECF No. 126 ¶ 3. On July 29, Plaintiffs contacted Mr. Cooper and took the position that all of the discovery previously served in January 2025—which sought full merits discovery and was not tailored to only class discovery per the Scheduling Order—were automatically deemed served upon the Court's July 22 ruling on the Motion to Dismiss. ECF No. 144, at Ex. A-3 at App. 079-80. Mr. Cooper objected to Plaintiffs' position that it "should respond to each Request" and identified that it had not received any discovery Requests particular to class certification. *See* ECF No. 144, at Ex. A-3 at App. 078-80. As Plaintiffs refused to withdraw any Requests, the parties subsequently met and conferred on July 31, well in advance of Mr. Cooper's August 28 deadline to respond to the Requests. ECF No. 144, at Ex. A at App. 006, ¶ 11. The parties further met and

conferred regarding the scope of the Requests—as well as the Federal Rule of Civil Procedure ("Rule") 30(b)(6) deposition topics (the "Topics"), which were served on August 4, 2025—on August 19 and 20. *Id*. at ¶ 12. During those hour-long meet and confers, Mr. Cooper reiterated its position that many of the Requests and Topics related *only* to merits-based discovery, and had no bearing on class certification. *See* ECF No. 144, at Ex. A-4 at App. 087-88. Mr. Cooper repeatedly stated its willingness to compromise, including if Plaintiff would narrow the scope of certain Requests to target discovery that would get at the Rule 23 elements of, for instance, commonality, typicality, and predominance. ECF No. 144, at Ex. A-4 at App. 082-83; at Ex. A-7 at 165-75; at Ex. A-8 at App. 177-79. In a good faith effort to solve the matter amicably and avoid unnecessary Court intervention, Mr. Cooper made numerous proposals and ultimately agreed to respond to sixteen additional Requests and Topics (7 Requests and 9 Topics, in total).  *See id*. In contrast, Plaintiffs withdrew just seven Requests (and zero Topics) that were not relevant and well beyond the scope of the Scheduling Order. *See* ECF No. 144, at Ex. A-3 at App. 076. To date, Plaintiffs have continued to state their entitlement to "common proof" of their claims, without explanation as to how each Request and Topic would assist them on their Rule 23 burdens. *See, e.g.* ECF No. 143. Plaintiffs have refused to narrow or limit those Requests that disproportionately seek "all" documents or communications, without limitation. Although Plaintiffs make mention that Mr. Cooper has not agreed to stipulate to any of Plaintiffs' Rule 23 burdens, ECF No. 143 at 14-15, fn. 6, they omit that they have made no proposed stipulations for Mr. Cooper to even consider.

On August 19, Mr. Cooper served its responses to Plaintiffs' Rule 30(b)(6) notice, *see* ECF No. 144, at Ex. A-7 at App. 164-75, and in an effort to compromise, sent a supplemental response on August 26, offering testimony on an additional eight Topics. *See* ECF No. 144 at Ex. A-8, at App. 176-179. Mr. Cooper further agreed to provide a witness for an additional Topic on

3

September 10, *see* ECF No. 144*, at Ex. A-4 at App. 082-83, bringing the total number of Topics for which Mr. Cooper agreed to provide a corporate representative to sixteen.  Mr. Cooper agreed to prepare a corporate representative to provide testimony concerning:

- When and how the Ransom Attack occurred (Topic No. 1);

- How Mr. Cooper collects, stores, and uses personally identifiable information ("PII") as a general matter, including and as to the types of PII involved in the Ransom Attack, and variations in the treatment of the type of PII involved in the Ransom Attack (Topic No. 2);

- How the PII impacted by the Ransom Attack was generally collected, stored, and encrypted, and variation in the collection, storage, or encryption of that PII (Topic No. 3);

- Action taken by Mr. Cooper upon discovery of the Ransom Attack (Topic No. 4);

- The results of its investigation(s) of the Ransom Attack (Topic No. 5);

- Actions taken by the threat actor in connection with the Ransom Attack (Topic No. 6);

- The nature and extent of the information or data, including PII, that was compromised in the Ransom Attack; the number of individuals that were affected by the Ransom Attack; and the investigation(s) and analysis that led to that determination, including when that determination was made, and who made that determination (Topic No. 7);

- The identification of the cybersecurity policies in effect at the time of the Ransom Attack (Topic No. 9);

- The type of data compromised in the Ransom Attack  (Topic No. 10):

- The retention schedule in effect at the time of the Ransom Attack as relevant to the impacted PII (Topic No. 15);

- The identity of the log retention policy in effect at the time of the Ransom Attack (Topic No. 16);

- The identity of SIEM and security traffic monitoring tools to and from its computer systems used by Mr. Cooper and in effect at the time of the Ransom Attack (Topic No. 18);

- The monitoring and logging of ingress and egress traffic to and from its computer systems at the time of the Ransom Attack (Topic No. 19);

- The use of cybersecurity threat intelligence programs that were in effect at the time of the Ransom Attack (Topic No. 20);

- The systems in effect at the time of the Ransom Attack to protect against or identify the exfiltration of PII (Topic No. 21); and

- Mr. Cooper's investigation of whether any PII accessed in the Ransom Attack was posted on the dark web or otherwise made available to cybercriminals (Topic No. 25).

Mr. Cooper served its amended responses and objections to the Requests on August 28, 2025, the due date. *See* ECF No. 144, Ex. A-5; Declaration of Allison Funk ("Funk Decl.") ¶ 6. In these responses, Mr. Cooper agreed to produce documents within its possession, custody, and control in response to Request Nos. 12-14, 16-17, 19-21, 25, 28-29, and 31-34.[1] Funk Decl. ¶ 4. The production included more than 76,000 pages and consisted of the following material:

- Details concerning the Ransom Attack, including a factual summary authored by a cybersecurity forensics firm, which includes details of the investigative methodology, diagrams of the systems affected in the Ransom Attack, copies of the notifications that alerted Mr. Cooper to the Ransom Attack (Request Nos. 17, 19 and 20);

- 267 privacy and data security policies, procedures and standards in effect at the time of the Ransom Attack, including Mr. Cooper's data retention schedule (Request No. 14);

- Mr. Cooper's Cyber Incident Security Response Plan, which outlines how Mr. Cooper prepares for, detects, analyzes, contains, eradicates and recovers from cybersecurity incidents (Request Nos. 32 and 33);

- Mr. Cooper's information security business continuity plan (Request No. 16);

- Breakdown of the customers whose PII was impacted in connection with Ransom Attack, including a breakdown by state and by category of PII (Request Nos. 28 and 29);

- Letter templates used to notify Mr. Cooper customers concerning the Ransom Attack (Request Nos. 20 and 29);

- Social Media Posts and Mr. Cooper Website Posts and Banners with information to customers concerning the Ransom Attack (Request No. 21);

- Organizational Charts identifying Mr. Cooper employees who have information about the Ransom Attack (Request No. 31); and

- Customer files, loan files, servicing files, and communications with each named Plaintiff (Request No. 12).

---

[1] Mr. Cooper responded to Request Nos. 13 and 24, however, there were no responsive documents to produce at the time the Responses were provided.

*Id.* ¶ 5.

After Mr. Cooper's August 26 letter on the Topics and August 28 Responses, the next communication received from Plaintiffs was that they were moving to move to compel and refused to further confer or compromise on any of their positions. *See* ECF No. 144, at Ex. A-4 at App. 084-85.

## LEGAL STANDARD

The Fifth Circuit requires the party seeking to prevent discovery to specify why the discovery is not relevant or show that it fails the proportionality requirement. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). "Valid objections are those 'accompanied by an adequate explanation to resist discovery.'" *Jane Doe (E.M.B.) v. G6 Hospitality, LLC*, 2025 WL 2556104, at *3 (E.D. Tex. Feb. 3, 2025) (quoting *ATC Media, LLC v. Michaels Stores, Inc*., 2023 WL 5538996, at *2 (N.D. Tex. Aug. 28, 2023)). Upon service of such objections, the burden shifts back to the party enforcing discovery rights to address each objection raised by the resisting party "and show why each discovery request is relevant" to their claims. *Vine v. PLS Fin. Servs., Inc*., 2020 WL 408983, at *4 (E.D. Tex. Jan. 24, 2020) (quoting *Johnson v. Tune*, 2011 WL 13196545, at *1 (E.D. Tex. Jan. 25, 2011)). The moving party's "failure to appropriately address Rule 26(b)(1) proportionality factors may be determinative in a proportionality analysis and result in the motion to compel being denied on its merits." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 595 (N.D. Tex. 2017).

Here, Mr. Cooper has served and explained its valid objections and Plaintiffs' have failed to carry their burden to show why the discovery is relevant and proportional to class certification.

## ARGUMENT

**I.**    **Merits Discovery and Sweeping Requests are Improper and Disproportionate to the Needs of the Case at the Class Certification Stage.**

As a threshold matter, Plaintiffs' emphasis on their "entitlement" to "common proof of each element of Plaintiffs' claims," ECF No. 143 at 13, is incorrect. The inquiry for class certification is *whether* there are common questions and *whether* those questions can be answered by common proof; the inquiry at the class certification stage is not to discover what those answers are. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459-60 (2013) ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class"); accord *In re Deepwater Horizon*, 739 F.3d 790, 806 (5th Cir. 2014); *see also Ludlow v. BP, P.L.C.*, 800 F.3d 674, 688 (5th Cir. 2015) ("[I]n *Amgen*, the Court made clear that questions common to the class need not be proved at the class certification stage, so long as they are capable of common resolution") (quotations omitted).[2] Plaintiffs need only make a "threshold showing" of "generalized evidence which proves or disproves an element [of Rule 23] on a simultaneous, class-wide basis." *Tex. Grain Storage, Inc. v. Monsanto Co.,* 2008 WL 11411844, at *5 (W.D. Tex. Apr. 24, 2008). Thus, full merits discovery is unnecessary and inappropriate at this stage.

Mr. Cooper does not dispute that there is some overlap in discovery between what Plaintiffs require to meet their burden of satisfying the Rule 23 elements and merits-based discovery. But that overlap is limited and not unbounded. *Amgen Inc.*, 568 U.S. at 465-66 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage"); *Hamm v. Acadia*

---

[2] The cases relied on by Plaintiffs to show they are entitled to "common proof of their claims," *see* ECF No. 143 at 11 (citing *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314–15 (N.D. Cal. 2018) and *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.,* 422 F. Supp. 3d 194, 246 (D.D.C. 2019)), is misplaced. As the courts concede in those cases, the inquiry for predominance is whether there exists a "common question susceptible to common proof;" the cases do not stand for the proposition that Plaintiffs are entitled to all merits discovery, nor that they need to show *all* common proof at the class certification stage. *McCormick,* 422 F. Supp. 3d at 246; *see also Anthem,* 327 F.R.D. at 311-12. Furthermore, the data breach cases cited by Plaintiffs for the proposition that they must prove conduct "before, during, and following the data breach," ECF No. 143 at 12 (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012)), are distinguishable, as each concerns either (i) a motion to approve a class settlement, (ii) a motion to approve a settlement class, after a class has already been approved, or (iii) a motion to certify a class (as opposed to a motion to compel discovery).

7

*Healthcare Co.*, 2023 WL 12088740, at *3 (E.D. La. June 1, 2023) ("[T]here is a danger in delving too far into the merits of a case prior to a class action determination") (citations omitted); *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 703 n.3 (5th Cir. 2010) (discovery on the merits must be "limited to those aspects relevant to making the certification decision on an informed basis") (quoting Fed R. Civ. P. 23 advisory committee notes). By generically describing each Request and Topic as seeking discovery on "common proof," Plaintiffs attempt to seek such unbounded discovery, in direct defiance of the Court's Scheduling Order and the efficiencies that bifurcation can bring to a class action. MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL") § 21.14 (2004) ("discovery into aspects of the merits unrelated to certification . . . can create extraordinary and unnecessary expense and burden"). As shown further below, the contested Requests and Topics have *nothing* to do with class certification, which supports denying the Motion.[3]

The discovery is further problematic because many of the requests are overbroad, framed without limitation and seek discovery that is disproportional to the needs for class certification. Most emblematic are those Request that seek "all documents and communications." ECF No. 143 at 7. This is inappropriate for class discovery. *Stewart v. Winter*, 669 F.2d 328, 331-32 (5th Cir. 1982) ("Plaintiffs' discovery motion asked the court to produce 'all the documents requested' in their notice to produce," and "all documents within the scope of their document request … While much of this material may have been relevant to the merits of the class claims, very little of it could have been 'necessary or helpful' to determining the threshold issues posed by Rule 23"); MCL § 11.443 (courts should "prevent indiscriminate, overly broad, or unduly burdensome demands" and "forbid sweeping requests, such as those for 'all documents relating or referring to' an issue,

---

[3] Plaintiffs also falsely claimed that Mr. Cooper was refusing to provide a privilege log, ECF No. 143 at 11-12, a position that Mr. Cooper never took.

party, or claim, and direct counsel to frame requests for production of the fewest documents possible"). Indeed, "[e]nforcing [P]laintiffs' sweeping request[s]" would impose on Mr. Cooper "one of the major burdens of defending this omnibus class action prior to any determination that the action was maintainable as such." *Winter,* 669 F.2d at 332 (affirming the district court's denial of plaintiffs' motion to compel production of all documents requested); *see also Carpenter v. Twin City Fire Ins. Co*., 2024 WL 947589, at *3 (N.D. Tex. Mar. 4, 2024) ("blockbuster" requests for "all documents and records" fail to meet Rule 34's requirement to "set forth with reasonable particularity the items or category of items sought") (quotations and citations omitted); *Landmark Am. Ins. Co. v. Gargoyle Mgmt. Inc.*, 2024 WL 5424423, at *5 (N.D. Tex. Nov. 19, 2024) (rejecting requests for production of documents seeking "all Documents and Communications" as overly broad and "not limited in scope or subject matter") (quotations omitted); *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 586 (N.D. Tex. 2016) ("[I]f overbroad requests like this for 'all documents' were permissible, there would be no need for tailored discovery requests, as both parties would merely requests 'all' relevant documents, and that it would further require Plaintiffs to decipher exactly what Defendant is requesting").

## II.    <u>The Motion to Compel Should be Denied as to Each of the Contested Requests and Topics.[4]</u>

### A.  Request Nos. 15 and 18, and Topic Nos. 8, 11, 13-14, 17, and 19

Plaintiffs frame Request Nos. 15 and 18 and Topic Nos. 8, 11, 13-14, 17, and 19 as seeking "common proof" of predominance as to whether Mr. Cooper's "data security practices … complied with industry standards, whether they were applicable to all class members, and whether

---

[4] In addition to the below, Plaintiffs also identify Topic No. 27 as a disputed Topic. ECF No. 143 at 8-9. However, Plaintiffs do not make any argument as to Topic No. 27 anywhere in the motion to compel. In any case, Mr. Cooper maintains that its interrogatory responses are sufficient to cover the information sought by Topic No. 27, and further, Mr. Cooper already stated that it has no responsive, non-privileged documents within its possession, custody, and control in relation to this topic (Request No. 13). As such, no testimony on Topic No. 27 is necessary.

Mr. Cooper failed to identify foreseeable security risks present for all class members." ECF No. 143 at 18-21. In substance, Plaintiffs are seeking proof about whether Mr. Cooper's cybersecurity practices met the standard of care that Plaintiffs allege, *see id.*—the central liability question in both their negligence and implied contract claims—which is far beyond the Scheduling Order's stay of merits discovery and does not get to whether they can show common proof.[5]

### 1. *Request No. 15 and Topic Nos. 8 and 17*

**Request No. 15**:  All Documents and Communications relating to internal or external assessments or audits (formal or informal) of Mr. Cooper's Data Security measures, including any findings, concerns, required actions, recommendations, conclusions, or follow-up, and the categories of Documents generated as a result.

**Topic No. 8:**  Any cybersecurity audits conducted, and the audit results, performed by or on behalf of You between January 1, 2018 and October 31, 2024, including the names of the persons involved in the cybersecurity audits.

**Topic No. 17**:  Your penetration testing and/or ethical hacking exercises into your Computer System (whether conducted by internal Employees and/or any outside Vendor); the identity of those conducting such testing or exercises; and the focus and results of such testing or exercises from January 1, 2018, to present.

Request No. 15 and Topics No. 8 and 17 widely seek *any* and *all* measurements, assessments, results of penetration testing and findings concerning Mr. Cooper's data security practices over an expansive six-year period, without limitation, and without regard to whether any of the discovery relates to the Ransom Attack. This is the quintessential fishing expedition in merits discovery, but worse because merits discovery is not open. These Requests do not get to any element of Plaintiffs' class certification burdens, and Plaintiffs do not attempt to explain that they do. At the class certification stage, granular discovery into audit findings, penetration testing

---

[5] Plaintiffs' reliance on *Caldwell* does not push the needle any further. *Id.* at 18. As Plaintiffs point out, the court in that case recognized that certain requests for production sought "information regarding [Defendant's] official policies and procedures surrounding the [violation]," and that this information was relevant to class certification. *Id.* (quoting *Caldwell v. Freedom Mortg. Corp.*, 2020 WL 8361933, at *3 (N.D. Tex. Sept. 22, 2020)).  Here, Mr. Cooper has already produced its data security policies in response to Request No. 14 and agreed to provide testimony on the same in response to Topic No. 9, so the matter is closed.

results or assessment results is unnecessary to show *whether* Plaintiffs can answer relevant questions at the merits stage with common proof. *St. Gregory Cathedral Sch. v. LG Elecs., Inc.*, 2013 WL 12214144, at *4 (E.D. Tex. Nov. 25, 2013) (denying motion to compel class discovery seeking detailed information relating to the design and implementation, and all testing and analysis performed on a product because it "extends well into merits discovery" and was overly broad).

Even if some marginal relevance could be claimed (it cannot), the scope of these Requests and Topics is vast and disproportionate, and can be obtained through other documents that Mr. Cooper has already provided. That includes over 250 policies, procedures, and standards reflecting Mr. Cooper's data security practices in effect at the time of the Ransom Attack (Request No. 14). Funk Decl. ¶ 5. Among these documents is Mr. Cooper's information security compliance standard, which outlines (i) its security requirements for protecting private information, (ii) its data classification and handling procedures, and (iii) its information security policy, which outlines the components of its information security program and vulnerability management. *Id*. All of these policies, procedures, and standards allow Plaintiffs the ability to assess the treatment of data for putative class members in order to assess if there are common answers to the class certification questions. Likewise, Mr. Cooper has also already agreed to prepare a corporate representative to testify as to its cyber security program and data security policies in effect at the time of the Ransom Attack, in connection with Topic No. 9 (cybersecurity policies), No. 16 (log retention policy), No. 18 (security information and event management and security traffic monitoring tools), No. 19 (monitoring and logging of ingress and egress traffic), No. 20 (use of cybersecurity threat intelligence programs), and No. 21 (systems designed to protect PII).

Request No. 15 should also be denied because it seeks "all documents and communications," which is unduly burdensome and not proportionate to the needs of the case. *St.*

*Gregory*, 2013 WL 12214144, at *1 ("the court must limit the frequency or extent of discovery when it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive") (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)) (quotations and citations omitted). Mr. Cooper does not maintain a central repository of "all documents and communications." Declaration of Alan Blunt ("Blunt Decl.") ¶ 9. Rather, in order to respond this unlimited Request, Mr. Cooper would need to undertake a comprehensive search across its email servers and domains, multiple different SharePoints, multiple different OneDrives, Archer (Mr. Cooper's Governance, Risk and Compliance system of record) and interview dozens or more team members from several different departments, including Information Security, Information Technology, Compliance, Enterprise Risk, Internal Audit, and potentially others in order to locate where "all" such documents and records reside. *Id.* Once complete, Mr. Cooper would then need to conduct a comprehensive search using a detailed list of search terms and custodians across all possible relevant SharePoints, OneDrives, email servers, and other systems of records, including searching across shared email boxes and hundreds of individual custodian records. *Id.* ¶ 10. After the documents and communications are identified, they need to be exported and reviewed by counsel. *Id.* ¶ 11. The collection, search, identification and review process would be a substantial burden and expense to Mr. Cooper, *id.* ¶ 13, and Plaintiffs have offered no justification for why, when merits discovery is stayed, that burden and expense is proportionate to the needs of the case at this time. *See Carpenter*, 2024 WL 947589, at *3. It is not, and these Requests should be denied.

### 2. *Topic No. 11*

**Topic 11**: Cybersecurity standards that You comply with and any findings of non-compliance with those same standards: NIST Cybersecurity Framework, United States Cybersecurity and Infrastructure Security Agency's standards, Microsoft Threat Protection Intelligence Team's standards, Center for Internet Security's Critical Security Controls, and the data security standards set forth by the Federal Bureau of Investigation.

Topic No. 11 does not seek discovery germane to any of the element of Rule 23 and Plaintiffs do not attempt to explain that it does. Plaintiffs have not alleged that Mr. Cooper failed to comply with all conceivable cybersecurity standards, yet that is precisely the discovery they seek. The NIST Cybersecurity Framework alone contains over 100 functions, categories and subcategories. Mr. Cooper should not be left guessing as to what Plaintiffs are trying to obtain, nor put to the burden of providing all of "any" findings about those standards because Plaintiffs refuse to articulate their theories or what they believe they need for class certification. For instance, Plaintiffs state that Topic No. 11 is relevant because the Complaint alleges that Mr. Cooper failed to address common vulnerabilities ("CVEs"), including several CVEs from 2014 and 2016. ECF No. 143 at 16. How Mr. Cooper's response to CVEs that occurred nearly a decade before the Ransom Attack justifies Topic No. 11 is beyond explanation. It does not. The frameworks referenced in Topic No. 11 are resources for companies to use when designing and maintaining their cybersecurity programs and are completely voluntary. In the absence of any explanation for why Plaintiffs require a witness to testify as to all possible voluntary standards, without any tethered to the Ransom Attack, the testimony sought by Topic No. 11 is not relevant to class certification, overly broad, and should be denied. *Brandner v. Abbott Lab'ys, Inc.*, 2011 WL 13202987, at *3 (E.D. La. Sept. 8, 2011) (denying to compel certain "overbroad" Rule 30(b)(6) deposition topics).

In any case, Mr. Cooper has already agreed to provide testimony concerning its cyber security program and data security policies in effect at the time of the Ransom Attack, in connection with Topic Nos. 9 (cybersecurity policies), No. 16 (log retention policy), No. 18 (security information and event management and security traffic monitoring tools), No. 19 (monitoring and logging of ingress and egress traffic), No. 20 (use of cybersecurity threat

13

intelligence programs), and No. 21 (systems designed to protect PII), and already produced over 250 policies, procedures, and standards reflecting Mr. Cooper's data security practices in effect at the time of the Ransom Attack (Request No. 14), which Plaintiffs can compare against the voluntary standards if they so desire.

### 3. *Request No. 18 and Topic No. 28*

**Request No. 18**: Documents sufficient to determine Your annual budget and how much You actually spent on Data Security for each year during the Relevant Time Period.

**Topic No. 28**: Your budgets for information security, risk assessment, and third-party consultants for data security, including any increase in the budget (whether through increase in money or personnel) following the Data Breach.

Plaintiffs do not articulate how Request No. 18 and Topic No. 28 address the merits of any claim, let alone class certification. Both concern Mr. Cooper's budget for data security under the guise of seeking to test negligence, reasonableness, and damages theories. *See* ECF No. 143 at 19. While Plaintiffs claim these requests "[s]eek to discover common proof to support these specific allegations and illuminate Mr. Cooper's course of conduct applicable to all class members," *id.,* they fail to cite any allegations in the Complaint that put Mr. Cooper's annual budgets, over six years, at issue. Nor do they try to explain how Mr. Cooper's budgets for cybersecurity would be relevant to damages. Even if Mr. Cooper's data security had any bearing on the elements of those claims, those are matters for merits discovery. Plaintiffs further fail to articulate how Request No. 18 and Topic No. will yield answers to whether they can show "common proof" necessary for their Rule 23 burdens. *Id.* at 19-21. In any event, Mr. Cooper has already agreed to testify about its cybersecurity program and data security policies in response to Topic No. 9 (cybersecurity policies), No. 16 (log retention policy), No. 18 (security information and event management and security traffic monitoring tools), No. 19 (monitoring and logging of ingress and egress traffic), No. 20 (use of cybersecurity threat intelligence programs), and No. 21 (systems designed to protect

14

PII), and already produced over 250 policies, procedures, and standards reflecting Mr. Cooper's

data security procedures in effect at the time of the Ransom Attack (Request No. 14). Funk Decl.

¶ 5. Plaintiffs fail to explain why more is necessary.

### 4. *Topic No. 24*

**Topic No. 24:** Your disclosures to Rocket Mortgage during its proposed acquisition of Mr. Cooper regarding Mr. Cooper's data security, data security budgeting and spending, the Data Breach, valuation of liabilities related to the Data Breach, and remediation efforts stemming from the Data Breach.

The Complaint makes no allegations related to Rocket Mortgage. Unquestionably, then,

Topic No. 24 seeks discovery that is not even relevant to the merits phase. *See* Fed. R. Civ. P. 26.

It instead seeks to delve into communications relating to an upcoming merger for no legitimate

purpose. Furthermore, what Mr. Cooper disclosed to a third-party almost two years after the

Ransom Attack will not yield information for any class certification element. Here again, Plaintiffs

fail to articulate how any of this information would inform *whether* they can answer questions with

"common proof." Even if it could, and as noted above, Mr. Cooper has already agreed to provide

a corporate representative to testify about its cybersecurity program and data security policies in

effect at the time of the Ransom Attack (Request No. 14) and provide testimony concerning its

cyber security program and data security policies in effect at the time of the Ransom Attack (Topic

Nos. 9, 16, 18, 19, 20, and 21), *see supra* 11, so at most Topic No. 24 would seek cumulative and

duplicative discovery of information that Plaintiffs already have, at additional expense and burden

to Mr. Cooper. *Taylor-Vick v. City of Midland*, 2009 WL 10703673, at *1 (W.D. Tex. June 25,

2009) ("[A] court must limit the frequency or extent of discovery if 'the discovery sought is

unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient, less burdensome, or less expensive' or 'the burden or expense of the proposed

discovery outweighs its likely benefit'") (quoting Fed. R. Civ. P. 26(b)(2)(C)(i) and (iii)).

15

### 5. *Topic Nos. 13 and 14*

**Topic No. 13**: Your knowledge of data breaches in the financial or mortgage industries prior to the Data Breach.

**Topic No. 14**: Your knowledge of prior or current lawsuits or other actions initiated against Mr. Cooper concerning the Data Breach or another security incident.

Exploring Mr. Cooper's knowledge of unrelated breaches by unrelated companies does not concern any element of Plaintiffs class certification burdens. If the occurrence of other data breaches against other companies has a bearing on class certification here, Plaintiffs have not explained it. As to Topic No. 14, Mr. Cooper has already explained to Plaintiffs in response to Request No. 25 that it has not experienced another "security incident," so there would be no reason to ask Mr. Cooper to provide testimony concerning the same query. ECF No. 144, Ex. A-2 at App. 137.

### 6. *Topic No. 29*

**Topic No. 29:** Your policy for the retention or deletion of the [PII] of consumers following the payment of [their] mortgage loans by consumers and/or the transfer of the servicing rights and obligations to another loan servicer.

Mr. Cooper has already produced its data security policies and procedures, including its data retention policies in response to Request No. 14, Funk Decl. ¶ 5, and agreed to provide a corporate representative to testify regarding its policies and procedures with respect to the PII impacted by the Ransom Attack in connection with Topic No. 2 (collection, storage and usage of PII), No. 3 (collection, storage, and encryption, and variation in the collection, storage, or encryption), No. 7 (investigation into the nature and extent of PII impacted by the Ransom Attack), No. 10 (how information was compromised in the Ransom Attack), and No. 15 (document and retention policy as it relates to the PII impacted by the Ransom Attack). Given the significant overlap, testimony on Topic No. 29 would not yield new information, and Plaintiffs do not demonstrate otherwise.

### B.  Request No. 22 and Topic No. 12

**Request No. 22:** All documents and communications relating to any Data Security changes Mr. Cooper implemented or planned to implement as a result of the Data Breach.

**Topic No. 12:** The measures You or others on Your behalf have taken subsequent to the Data Breach, including those planned, but not yet started or completed, to remedy any potential vulnerabilities in Your server configurations, Computer Systems, networks, code, other electronic devices, storage devices, and software to prevent future data breaches and data disclosures.

Request No. 22 concerns any changes in Mr. Cooper's data security practices made as a result of the Ransom Attack, whereas Topic No. 12 seeks *any* changes to Mr. Cooper's cybersecurity practices after the Ransom Attack, without regard to whether those changes concern the Ransom Attack or even concern the named Plaintiffs or putative class. Plaintiffs contend that these items are justified because they seek "common proof" regarding (i) whether Mr. Cooper's data security practices complied with industry standards, and (ii) the seriousness of the Ransom Attack, the harm common to all class members, and Mr. Cooper's actions following the Ransom Attack. ECF No. 143 at 21. On the former justification, compliance with industry standards is a merits question, but neither Request seeks information regarding compliance with industry standards, so that cannot be a basis for this discovery. Even as to what the Requests seek, which is actions after the Ransom Attack, that does not address whether a class certification question can be answered by common evidence, rather it seeks full, wide-ranging discovery as to the answer to the question itself for the merits phase of the case. And as to the latter justification, the harm to class members is what Plaintiffs have uniquely alleged and is specific to each Plaintiff and putative class member.

Further, Mr. Cooper has already produced information concerning all of these issues, including in response to Request No. 19 (documents sufficient to show how Mr. Cooper responded to the Ransom Attack) and No. 29 (the number of individuals in the U.S. and its territories whose PII was affected by the Ransom Attack and the manner in which those individuals were notified).

17

Funk Decl. ¶ 5. Mr. Cooper also agreed to testify as to Topic No. 4 (action taken by Mr. Cooper upon discovery of the Ransom Attack) and No. 5 (the results of investigation of the Ransom Attack). Plaintiffs do not explain why this information is insufficient.

Lastly, and as previously discussed above, Mr. Cooper does not maintain a central repository of "all documents and communications" and collection, search, identification and review process in connection with this Request would be a substantial burden and expense to Mr. Cooper. Blunt Decl. ¶ 9; *see also supra*, 11-12; *Carpenter*, 2024 WL 947589, at *3; *Landmark*, 2024 WL 5424423, at *5; *Gondola*, 223 F. Supp. 3d at 586.

### C.  Request No. 23 and Topic No. 23

**Request No. 23:** All documents and communications provided by Mr. Cooper to or exchanged between Mr. Cooper and any insurers, regulators, attorney generals' offices, or any other governmental entities" regarding the Ransom Attack.

**Topic No. 23**: Your communications to any and all law enforcement agencies and/or federal or state regulators facts and circumstances surrounding the Ransom Attack.

Plaintiffs assert that they are seeking through these requests information to discover "common proof" regarding whether Mr. Cooper "complied with industry standards and whether Mr. Cooper failed to identify foreseeable security risks present for all class members." ECF No. 143 at 21. That *ipse dixit* explanation falls flat. These sweeping requests go to the substance of Mr. Cooper's regulatory reporting and obligations, and not to any factor under Rule 23. Further, Plaintiffs already know the scope and "the facts and circumstances" of the Ransom Attack. Mr. Cooper publicly disclosed this information in public filings with the U.S. Securities and Exchange Commission and notices to state attorneys general, *id.*; have produced hundreds (if not more) of documents pertaining to the Ransom Attack, Funk Decl. ¶ 5; provided witness testimony and document production from 2024 about the Ranson Attack, *id.* ¶ 4; and have agreed to even more testimony about the facts and circumstances of the Ransom Attack, including (i) when and how

18

the Ransom Attack occurred (Topic No. 1); (ii) the action taken by Mr. Cooper upon discovery of the Ransom Attack (Topic No. 4); (iii) the results of investigation of the Ransom Attack (Topic No. 5); (iv) actions taken by the threat actor in connection with the Ransom Attack (Topic No. 6); (v) the nature and extent of the information or data that was compromised in the Ransom Attack, and the number of persons affected by the Ransom Attack (Topic No. 7); and (vi) the type of data compromised in the Ransom Attack (Topic No. 10). Mr. Cooper also already provided Plaintiffs with the number of individuals whose data was impacted in connection with the Ransom Attack, by state and further broken down by the categories of data that were impacted (Request No. 29). Thus, Plaintiffs' attempt to compel every single communication with every single governmental entity far exceeds what is necessary to file a class certification motion. Plaintiffs' proposal to learn "the facts and circumstances surrounding the Data Breach[,]" ECF No. 143 at 22 (quotation and citation omitted), by seeking "all documents and communications" with regulators and insurers, *id.,* and testimony as to the same, *id.,* is the equivalent of attempting to learn what is in the U.S. tax code by only reading tax returns. Nothing Plaintiffs seek from these Topics would uncover anything necessary for class certification, let alone information they do not already have. Topic No. 23 and Request No. 23 are not relevant to class certification, duplicative, and would impose an unnecessary burden on Mr. Cooper. *See Taylor-Vick*, 2009 WL 10703673, at *1; *St. Gregory*, 2013 WL 12214144, at *4.

Plaintiffs further contend that Mr. Cooper's communications with regulators are "likely to provide common proof….including the identities of the class members and the harm common to all class members." ECF No. 143 at 22-23. Even if that were the case (it is not), it is well-settled that the identity of each class member is not necessary for class certification. *Transamerican Refin. Corp. v. Dravo Corp.,* 130 F.R.D. 70, 73 (S.D. Tex. 1990) ("It is not necessary to determine the

19

identity of the class members at the time of class certification"); *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970) ("It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained" in order to certify a class). Nor should Plaintiffs be actively contacting unrepresented class members who are Mr. Cooper customers. Rather, Plaintiffs' burden is to demonstrate that it can ascertain the identity of putative class members, not that it knows those identities. *A.A. ex rel. P.A. v. Phillips*, 2023 WL 334010, at *2 (5th Cir. Jan. 20, 2023). And Plaintiffs offer no explanation as to how Mr. Cooper's correspondence with regulators would show common harm to class members—because it would not.

As a final matter, the burden of Request No. 23 and Topic No. 23 far outweigh any benefit. Collecting, reviewing, and producing these materials would be unduly burdensome and disproportionate to the needs for class certification, Blunt Decl. ¶ 13, especially when Mr. Cooper is already providing testimony about the Ransom Attack and the impacted PII.

### D. Topic Nos. 22 and 26

**Topic No. 22:** Your statements to the public, your customers, and/or their clients about the security of PII in Your possession prior to and after the Data Breach, including statements in Your Privacy Policy and/or client agreements.

**Topic No. 26:** Communications between You and any third party concerning the Data Breach, including the identification or number of individuals whose PII was potentially exposed during the Data Breach, the status of any investigation, and the payment of any assessment, monies, or damages resulting from the Data Breach.

Plaintiffs allege that these Topics "seek common proof regarding Mr. Cooper's actions during and after the Ransom Attack, the number of individuals affected by the breach, the types of harm caused to those individuals, and the risk of future harm to all class members." ECF No. 143 at 23. Setting aside the fact that Mr. Cooper's public-facing statements, including its privacy policies, can be easily obtained by Plaintiffs without Mr. Cooper's assistance, Plaintiffs already have the necessary information here. Mr. Cooper has produced copies of its data security policies

and procedures (Request No. 14) and documents sufficient to show (i) the systems that were compromised by the Ransom Attack (Request Nos. 17 and 19), (ii) the types of PII affected by the Ransom Attack (Request No. 28), (iii) how Mr. Cooper responded to the Ransom Attack (Request No. 20), (iv) the number of individuals in the U.S. and its territories whose PII was affected by the Ransom Attack (Request No. 28), and (v) the manner in which those individuals were notified (Request No. 29). Funk Decl. ¶ 5. Mr. Cooper also agreed to produce a corporate representative to provide testimony concerning (i) the action taken by Mr. Cooper upon discovery of the Ransom Attack (Topic No. 4); (ii) the results of investigation of the Ransom Attack (Topic No. 5); (iii) the nature and extent of the information or data that was compromised in the Ransom Attack, and the number of persons affected by the Ransom Attack (Topic No. 7); and (iv) the identification of the cybersecurity policies in effect at the time of the Ransom Attack (Topic No. 9). And, necessarily, any communications between Mr. Cooper and its customers would also be in the possession of Plaintiffs, who are current and former Mr. Cooper customers.

With respect to Topic No. 22 more specifically, Plaintiffs fail to identify the particular statements they believe they need testimony on to support their class certification motion. For instance, the Topic calls for testimony about statements in privacy policies or client agreements, ECF No. 143 at 23, but does not identify any particular statements they would anticipate asking a witness about. Nor is the Topic limited in time, and instead spans Plaintiffs' purported six-year relevant time period. Where Mr. Cooper has millions of customers, with millions of agreements over many years, it would be unduly burdensome (even if possible) for Mr. Cooper to even prepare a witness on this topic. *Mitchell v. Toyota of Dallas*, 2024 WL 2946580, at *1 (N.D. Tex. June 10, 2024) ("[T]o undertake the burden of preparing a corporate representative to testify to these topics is both improper and unnecessary at this time").

## CONCLUSION

For the foregoing reasons, Mr. Cooper respectfully requests that Plaintiffs' Motion to Compel, ECF No. 143, be denied in its entirety.

Dated: September 19, 2025

/s/ W. Kyle Tayman

**W. Kyle Tayman** (*pro hac vice*)
**Goodwin Procter LLP**
ktayman@goodwinlaw.com
1900 N Street, NW
Washington, DC 20036
T. 202.346.4245
F. 202.204.7309

**Allison J. Schoenthal** (*pro hac vice*)
**Allison M. Funk** (*pro hac vice*)
**Goodwin Procter LLP**
The New York Times Building
620 Eighth Avenue
New York, New York, 10018
T. 212.459.7183
F. 212.937.3850
aschoenthal@goodwinlaw.com
afunk@goodwinlaw.com

**Thomas G. Yoxall**
Texas Bar No. 00785304
Tom.Yoxall@troutman.com
**Roger B. Cowie**
Texas Bar No. 00783886
Roger.Cowie@troutman.com
**M. Taylor Levesque**
Texas Bar No. 24107296
Taylor.Levesque@troutman.com
**TROUTMAN PEPPER LOCKE**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2025, a copy of the foregoing was served by electronic means via the Court's CM/ECF System on all counsel registered to receive electronic notices.

*/s/ W. Kyle Tayman*
W. Kyle Tayman