**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JENNIFER CABEZAS et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>MR. COOPER GROUP, INC. and NATIONSTAR MORTGAGE LLC d/b/a Mr. COOPER,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:23-cv-02453-N |

**MR. COOPER'S OPPOSITION TO**
**PLAINTIFFS' MOTION TO SUBSTITUTE CLASS REPRESENTATIVE**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

A. Ms. Pollard has been the Sole Florida Representative Since July 2024. ................ 2
B. The Deadline for Joinder and Amendment was August and September 2025........ 2
C. The Requested Substitution Comes After Substantial Class Proceedings. ............. 3
D. Plaintiffs Knew of the Representative Problem Since at Least July. ...................... 3

LEGAL STANDARD ................................................................................................ 5

ARGUMENT ............................................................................................................ 6

I. Plaintiffs Have Not Shown Good Cause Under Rule 16. .......................................6

A. Plaintiffs' Strategic Choices and Lack of Diligence Do Not Justify the Explanation for Substitution. ............................................................ 6
B. Substitution is Not Important because Plaintiffs Have Not Shown That Mr. Round Can Preserve the Florida Subclass. 10
C. Substitution Would Materially Prejudice Mr. Cooper............................. 13
D. A Continuance Would Not Eliminate the Prejudice................................. 15

II. Plaintiffs' Alternative Arguments Cannot Circumvent Rule 16's Good Cause. ....16

A. Plaintiffs' "Routine Substitution" Authorities Do Not Resolve this Motion.................................................................................................. 16
B. Rules 15, 21, 23, and 24 Do Not Provide An End Run Around the Scheduling Order. ......................................................................... 18

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arevalo v. Fidelity National Financial, Inc.*,
2007 WL 9712070 (W.D. Tex. Feb. 14, 2007)....................19

*Banks v. Spence*,
114 F.4th 369 (5th Cir. 2024), *cert. denied sub nom.* 145 S. Ct. 1082 (2025) ....................6

*Brewer v. Holder*,
2015 WL 13799993 (D.D.C. Apr. 8, 2015)....................9

*Chieftain Royalty Co. v. SM Energy Co.*,
2020 WL 13582565 (W.D. Okla. Aug. 31, 2020) ....................15

*Colindres v. QuitFlex Manufacturing*,
235 F.R.D. 347 (S.D. Tex. 2006)....................15

*Doe v. Waller Indep. Sch. Dist.*,
2024 WL 4729754 (S.D. Tex. Nov. 8, 2024) ....................16

*Dussouy v. Gulf Coast Investment Corp.*,
660 F.2d 594 (5th Cir. 1981) ....................6

*In re Enron Corp.*,
610 F. Supp. 2d at 652–55 ....................12

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
610 F. Supp. 2d 600 (S.D. Tex. 2009) ....................7

*Estrada v. Martin Marietta Materials, Inc.*,
2020 WL 9424368 (D. Colo. Oct. 5, 2020), *report and recommendation adopted*, 2020 WL 9424260 (D. Colo. Oct. 27, 2020) ....................7

*Fahim v. Marriott Hotel Servs., Inc.*,
551 F.3d 344 (5th Cir. 2008) ....................12, 19

*Harrison v. Aztec Well Servicing Co.*,
2021 WL 5280956 (N.D. Tex. Nov. 12, 2021)....................5

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am., AFL-CIO v. LTV Aerospace & Def. Co.*,
136 F.R.D. 113 (N.D. Tex. 1991)....................11

*Johnson v. Am. Credit Co. of Ga.*,
581 F.2d 526 (5th Cir. 1978) ....................11

*Johnson v. GEICO Cas. Co.*,
310 F.R.D. 246 (D. Del. 2015), *aff'd*, 672 F. App'x 150 (3d Cir. 2016)................................11

*Kinkead v. Humana at Home, Inc.*,
330 F.R.D. 338 (D. Conn. 2019)..........................................................................................15

*Larry James Oldsmobile-Pontiac-GMC Truck Co. v. General Motors Corp.*,
175 F.R.D. 234 (N.D. Miss. 1997)........................................................................................17

*McCombs v. Allwaste Recovery Sys., Inc.*,
1999 WL 102816 (N.D. Tex. Feb. 24, 1999)........................................................................19

*Miller v. Ford Motor Co*.,
2025 WL 3751804 (E.D. Cal. Dec. 29, 2025) .......................................................................10

*In re Motor Fuel Temperature Sales Practices Litigation*,
2009 WL 3122501 (D. Kan. Sept. 24, 2009) .........................................................................10

*In re Norplant Contraceptive Prods. Liab. Litig.*,
163 F.R.D. 258 (E.D. Tex. 1995)..........................................................................................15

*Oliver v. Am. Express Co*.,
2023 WL 4471937 (E.D.N.Y. July 11, 2023)......................................................................8, 9

*Phillips v. Ford Motor Co*.,
435 F.3d 785 (7th Cir. 2006) .................................................................................................17

*Reliance Ins. Co. v. La. Land & Expl. Co.*,
110 F.3d 253 (5th Cir. 1997) .................................................................................................15

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
315 F.3d 533 (5th Cir. 2003) ...................................................................5, 6, 15, 16, 19

*S.G. by & through Gordon v. Jordan Sch. Dist.*,
333 F.R.D. 220 (D. Utah 2019) ..........................................................................................7, 9

*Santacruz v. Allstate Tex. Lloyd's, Inc.*,
590 F. App'x 384 (5th Cir. 2014) ..........................................................................................16

*Schechner v. Whirlpool Corp.*,
2017 WL 5589658 (E.D. Mich. Nov. 21, 2017)................................................................8, 12

*Simms v. Jones*,
296 F.R.D. 485 (N.D. Tex. 2013), *aff'd sub nom. Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016)..........................................................................................................10

*Alex A. ex rel. Smith v. Edwards*,
2023 WL 2700712 (M.D. La. Mar. 29, 2023) ......................................................................20

*Stewart v. Winter*,
669 F.2d 328 (5th Cir. 1982) ....................12

*Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*,
590 F. Supp. 2d 1093 (N.D. Iowa 2008)....................7

*Usler v. Vital Farms, Inc.*,
2022 WL 22782467 (W.D. Tex. Sept. 26, 2022)....................18

*Vuyanich v. Republic National Bank of Dallas*,
82 F.R.D. 420 (N.D. Tex. 1979) ....................18

*Walker v. Alta Colls., Inc.*,
2011 WL 13269547 (W.D. Tex. Aug. 10, 2011)....................15

**Other Authorities**

Fed. R. Civ. P. 15(a)(2)....................18

Fed. R. Civ. P. 16(b) ....................5

Fed. R. Civ. P. 21 ....................19

Fed. R. Civ. P. 23(a) ....................11

Fed. R. Civ. P. 23(d) ....................19

Fed. R. Civ. P. 24....................19

Fed. R. Civ. P. 24(a)(1)....................19

Fed. R. Civ. P. 24(b)(1)....................19

**INTRODUCTION**

Plaintiffs filed their motion for substitution after Mr. Cooper served its opposition to class certification. For this reason alone, among others, the Motion fails to meet Rule 16(b)'s good cause standard to permit amending the case schedule and substituting a new plaintiff, and should be denied.

Plaintiffs selected Kay Pollard as the sole representative of their proposed Florida subclass, litigated class certification on that basis, and proceeded through extensive class discovery after the Scheduling Order's deadlines for adding parties and amending pleadings expired over a year ago. Mr. Cooper completed that discovery and served its opposition to class certification, and only then did Plaintiffs move to replace Ms. Pollard with a new individual, Austin Round. Mr. Round was not subject to class discovery and his facts and circumstances are unknown. Substituting a class representative under these circumstances, after moving for certification and after the defendant has opposed certification, is unprecedented.

This is not a routine substitution for which courts sometimes permit the substitution of class representatives. Because Plaintiffs' request seeks relief from expired deadlines, Rule 16 requires them to establish good cause, which they have not. While Ms. Pollard's reported health issues may explain why Plaintiffs did not anticipate this problem earlier, they do not establish the diligence required once her continued ability to serve became uncertain months ago. Plaintiffs also chose to move for certification of the Florida subclass with a single representative, and the consequences of that choice is not good cause to reopen the case schedule.

Good cause is also lacking because the resulting prejudice to Mr. Cooper will be substantial. In opposing Plaintiffs' motion for class certification, the identity of a proposed class representative matters: standing, injury, causation, typicality, and adequacy must be assessed plaintiff by plaintiff. Substituting Mr. Round would require new written discovery, document

production, investigation, and deposition testimony concerning his individual circumstances and qualifications. It will also require Mr. Cooper to revisit its certification briefing and expert work, at substantial cost. Plaintiffs' offer of additional discovery does not eliminate that prejudice; it confirms it. Simply extending the schedule would not restore the time and resources already spent.

And there is a more fundamental problem that demonstrates that there is no "good cause" to substitute Mr. Round: on the face of the papers submitted by Plaintiffs, they have not shown that Mr. Round is even a member of the subclass he proposes to represent. Plaintiffs' proposed amended complaint alleges that Mr. Round currently resides in Tennessee, while the proposed subclass is defined to be comprised of individuals "residing in Florida." A proposed representative must belong to the subclass he seeks to represent, and Mr. Round would not.

Plaintiffs' other arguments that different procedural rules apply is distraction. There is no good cause, and the prejudice to Mr. Cooper to permit substitution at this late hour would be significant. Accordingly, the Court should deny Plaintiffs' Motion.

## BACKGROUND

### A. Ms. Pollard has been the Sole Florida Representative Since July 2024.

Plaintiffs filed the operative Consolidated Amended Complaint (the "Consolidated Complaint") on July 15, 2024, identifying Ms. Pollard as the sole Florida plaintiff. *See* ECF 70 ¶ 3. In it, they sought to have Ms. Pollard appointed as the sole representative of a Florida subclass defined as consisting of "[a]ll individuals residing in Florida whose PII was accessed and/or acquired" during the Data Incident. *Id.* ¶ 452.

### B. The Deadline for Joinder and Amendment was August and September 2025.

The Court issued the class certification scheduling order on July 25, 2025 (the "Scheduling Order"). *See* ECF 126. The Scheduling Order required motions to join additional parties within 30 days, by August 24, 2025, and Rule 25 motions to amend within 60 days, by September 23,

2025, and further required that any subsequent Rule 15 amendments show good cause pursuant to Rule 16(b). *Id.* ¶ 2. Although the Scheduling Order was modified several times—including by unopposed motion filed as recently as June 18, 2026, *see* ECF 198, 199—the joinder and amendment deadlines were not moved. Plaintiffs never sought an extension of either deadline.

**C. The Requested Substitution Comes After Substantial Class Proceedings.**

The parties have completed substantial class proceedings, including months of class discovery. Mr. Cooper served its First Requests for the Production of Documents ("RPDs") from Plaintiffs on October 3, 2025, followed by Interrogatories ("ROGs") on January 29, 2026 and Requests for Admission ("RFAs") on February 2, 2026. Declaration of Molly L. Leiwant ("Leiwant Decl.") ¶ 4. Ms. Pollard responded to the RPDs on November 21, 2025 and produced documents on the same date, and responded to the ROGs on March 2, 2026 and to the RFAs on March 4, 2026. *Id.* ¶ 5. Following numerous deficiency letters over several months and a motion to compel related to the RPDs, Plaintiffs, including Ms. Pollard, continued to produce documents as late as July 31, 2026. *Id.* ¶¶ 5–7; *see also* ECF 178, 185, 191, 200; Pl. App'x at 003–04 ¶¶ 15–17. In that time, Mr. Cooper took the depositions of the other 19 named Plaintiffs. *Id.* ¶ 28.

The parties have also completed substantial briefing on class certification. Plaintiffs served their certification motion, accompanied by eight expert reports, on April 1. *Id.* ¶ 24. Mr. Cooper served its opposition on September 3. *Id.* That opposition was based on the existing pleadings, representatives, declarations submitted as part of motion practice, discovery record, and proposed classes, including extensive assessment of each individual Plaintiff. *Id.* ¶ 25. Mr. Cooper also served three expert reports on September 3 that analyzed the individual Plaintiffs, including Ms. Pollard. *See id.* ¶ 25. To date, the parties have conducted 10 expert depositions. *Id.* ¶ 28.

**D. Plaintiffs Knew of the Representative Problem Since at Least July.**

On April 16, 2026, Mr. Cooper requested that Plaintiffs' counsel provide availability for

Ms. Pollard's deposition. *Id.* ¶ 9. Plaintiffs advised on May 26, 2026 that Ms. Pollard was available on July 15, 2026. *Id.* Mr. Cooper then served a notice setting her deposition for July 15 in Kissimmee, Florida. *Id.*; *see also* Pl. App'x at 007–08. Two weeks prior, on July 2, 2026, Plaintiffs' counsel advised that Ms. Pollard was no longer available on July 15, 2026 "due to recent medical issues" and that counsel would "follow up with alternative dates once we have them." *Id.* ¶ 10; *see also* Pl. App'x at 007.

On July 9, 2026, Mr. Cooper followed up for Ms. Pollard's updated availability, and inquired again on July 21. *Id.* ¶ 11. On July 22, 2026, counsel advised that they "continue to work with Ms. Pollard to find dates of her availability, which continues to be impacted by medical issues, and [would] get back to [Mr. Cooper's counsel] as soon as possible." *Id.* ¶ 11; *see also* Pl. App'x at 010. On July 29, 2026, Mr. Cooper requested a new deposition date and stated that it needed to complete the deposition no later than August 20, 2026 to meet its September 3 deadline to serve its class certification opposition and expert reports. *Id.* ¶ 12; *see also* Pl. App'x at 009. On August 5, Plaintiffs responded that they were still "gathering" Ms. Pollard's availability and promised that by August 10, they would provide a date for the week of August 17. *Id.* ¶ 13; *see also* Pl. App'x at 009. Based on these assurances, Mr. Cooper's counsel spent time and resources preparing for Ms. Pollard's deposition. *Id.* ¶¶ 25–27.

On August 10, 2026, Plaintiffs raised for the first time the prospect of substituting out Ms. Pollard "[d]ue to ongoing medical issues" with a new, unidentified representative who was purportedly a Florida resident. *Id.* ¶ 15; *see also* Pl. App'x at 015–16.[1] Plaintiffs proposed to amend the consolidated complaint in one week, provide documents and written discovery

[1] With their Motion, Plaintiffs represent only that "Plaintiff Pollard came to the decision that she was no longer able to serve as a named Plaintiff and class representative in this case." Pl. App'x at 004 ¶ 23.

responses for the new plaintiff in three weeks, and present the new plaintiff for deposition in September (although no availability was ever offered). *Id.* ¶ 16; *see also* Pl. App'x at 015–16.

The parties conferred between August 14 and 20, 2026, during which time Mr. Cooper explained the prejudice it would suffer because it had already substantially prepared its expert reports and class certification opposition, both of which relied heavily on the named Plaintiff discovery record. *Id.* ¶¶ 17–18, 20. On August 17, 2026, Mr. Cooper declined to consent to substitution. *Id.* ¶ 21; *see also* Pl. App'x at 013–14. On September 3, 2026, pursuant to the Scheduling Order, *see* ECF 199, Mr. Cooper served its opposition to Plaintiffs motion for class certification and its expert reports. Leiwant Decl. ¶ 24. One week later, and over three weeks after Mr. Cooper refused to consent to substitution, Plaintiffs filed this Motion on September 10, 2026, representing that Ms. Pollard decided she was no longer able to serve as a class representative. *See* ECF 207. Class discovery closed on September 25, 2026. ECF 199.

## LEGAL STANDARD

Rule 16(b) requires that the moving party show good cause before the court will amend its scheduling order to permit belated motion or amendments. Fed. R. Civ. P. 16(b). The Fifth Circuit has "ma[d]e clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired" and "[o]nly upon [the] movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535–36 (5th Cir. 2003). To determine whether good cause exists, Fifth Circuit courts balance the four *S&W* factors: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* at 536 (citation omitted); *see also* *Harrison v. Aztec Well Servicing Co.*, 2021 WL 5280956, at *2 (N.D. Tex. Nov. 12, 2021) (applying

the *S&W* factors first in determining whether to grant movant's motion to amend pleadings after the scheduling order deadline expired); *Banks v. Spence*, 114 F.4th 369 (5th Cir. 2024), *cert. denied sub nom.* 145 S. Ct. 1082 (2025) (same).[2]

**ARGUMENT**

## I. Plaintiffs Have Not Shown Good Cause Under Rule 16.

Each *S&W* factor weighs against granting Plaintiffs' Motion: "(1) the explanation for the failure to [timely move for substitution]; (2) the importance of the [substitution]; (3) potential prejudice in allowing the [substitution]; and (4) the availability of a continuance to cure such prejudice." *S&W*, 315 F.3d at 535–36 (citation omitted). Although Plaintiffs may have a colorable explanation for why they did not seek substitution before the Scheduling Order's deadlines expired, they have not demonstrated diligence after the need for substitution became apparent; substitution is not important because Mr. Round is not a member of the Florida subclass; substitution would inflict prejudice on Mr. Cooper because it has already served its certification opposition and expert reports; and a continuance would delay and could not cure the prejudice to Mr. Cooper.

### A. Plaintiffs' Strategic Choices and Lack of Diligence Do Not Justify the Explanation for Substitution.

Rule 16 does not afford good cause to a party seeking to reverse the consequences of its own deliberate strategic decisions. The Court's Scheduling Order set deadlines for motions to join additional parties by August 24, 2025, and to amend pleadings by September 23, 2025. *See* ECF

[2] While Plaintiffs attempt to define the governing standard as Rule 15's liberal amendment standard, they rely on outdated authority. *See* ECF 207 at 5–6, 11–13. Plaintiffs cite *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir. 1981) for the proposition that courts have a "bias in favor of granting leave to amend." *Id.* at 14 (quoting *Dussouy,* 660 F.2d at 598). But *Dussouy* predates the current Fifth Circuit framework and arose in an ordinary civil action, not a class action involving extensive fact and expert discovery concerning each proposed class representative. Regardless, Rule 15 would apply only after establishing good cause under Rule 16(b).

126 ¶ 2; *see also* ECF 199. Plaintiffs are represented by experienced class action counsel who are well aware that it is not unusual for named plaintiffs to drop out of class action litigation—indeed, Plaintiff Karen Williams previously voluntarily dismissed her claims—yet, they never sought to extend either deadline. Plaintiffs' choice to proceed with a single Florida representative, and to forgo subclasses for other affected states, was a calculated litigation decision made with full knowledge of the Scheduling Order's deadlines. The risk that Ms. Pollard might choose not to participate was foreseeable, and Plaintiffs did not hedge against it. Even when Plaintiffs recently filed a duplicative overlapping class action in California, *Snyder et al. v. Mr. Cooper Group Inc. et al.*, Case No. 2:26-cv-10206 (C.D. Cal.), in an attempt at forum shopping amid fear this Court would deny class certification, they still chose not to pursue a Florida subclass and opted to file only a California subclass. The Florida subclass was thus never critical to Plaintiffs' case—it was one of several subclasses Plaintiffs filed with only a single representative. Their past strategic choices cannot explain now the need for substitution. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 610 F. Supp. 2d 600, 652–55 (S.D. Tex. 2009) (denying leave to amend under Rule 16 where the movant "deliberately chose to pursue a broad, innovative, and risky theory" and "decided not to protect itself by simultaneously arguing in the alternative"); *S.G. by & through Gordon v. Jordan Sch. Dist.*, 333 F.R.D. 220, 224 (D. Utah 2019) (same and noting that "a strategic decision … fails to establish good cause"); *Estrada v. Martin Marietta Materials, Inc.*, 2020 WL 9424368, at *3 (D. Colo. Oct. 5, 2020), *report and recommendation adopted*, 2020 WL 9424260 (D. Colo. Oct. 27, 2020) (denying motion for leave to amend where it was sought to undo "the affirmative and strategic decision" that plaintiff had made earlier); *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 590 F. Supp. 2d 1093, 1102 (N.D. Iowa 2008) (finding no good cause

to amend the scheduling order where movant had "made a tactical decision not to assert the claim [prior to the scheduling order deadline].").

Plaintiffs' lack of diligence after the purported need for substitution became apparent independently defeats good cause. Even though Ms. Pollard's decision to no longer serve as a class representative arose after the Scheduling Order's deadlines for joining parties and amending pleadings had expired, the timing of her decision is not end of the inquiry. Rule 16(b) also requires the moving party to demonstrate diligence after the need for amendment became apparent. *See Oliver v. Am. Express Co*., 2023 WL 4471937, at *5 (E.D.N.Y. July 11, 2023) ("[I]n the class action context, plaintiffs can show sufficient diligence if they move to amend once they become aware of the need to fill a class representative gap." (quotations and citation omitted)); *Schechner v. Whirlpool Corp.,* 2017 WL 5589658, at *2–3 (E.D. Mich. Nov. 21, 2017) (denying substitution where inadequate communication between counsel and the representative, and late action near the end of discovery, demonstrated a lack of diligence). On that question, Plaintiffs' showing is deficient.

As discussed *supra* p. 4, Plaintiffs' counsel informed Mr. Cooper on July 2, 2026 that Ms. Pollard could not attend her July 15 deposition due to medical issues. Leiwant Decl. ¶ 10; *see also* Pl. App'x at 007. By July 22, Plaintiffs acknowledged that her availability "continue[d] to be impacted by medical issues." *Id.* ¶ 11; see also Pl. App'x at 010. By July 29, Mr. Cooper had advised that the deposition needed to occur by August 20 given the case schedule. *Id.* ¶ 12; Pl. App'x at 009. And by August 5, Plaintiffs were still merely "gathering" Ms. Pollard's availability for the week of August 17. *Id.* ¶ 13; *see also* Pl. App'x at 009. Plaintiffs had thus known for more than five weeks that the sole Florida subclass representative was unable to fulfill her representative obligations. During that time, Plaintiffs also knew that Mr. Cooper's September 3, 2026 deadline

to file its opposition to Plaintiff's motion for class certification was rapidly closing and that Mr. Cooper had dedicated substantial resources to preparing to oppose certification. Yet, they waited until August 10 to propose substitution, and even after Mr. Cooper refused to agree to substitution on August 17, they waited three more weeks until September 10, after Mr. Cooper served its class certification opposition, to file the present Motion.

Plaintiffs' Motion and supporting declaration are silent on the key facts the Court would need to know to assess their diligence. Plaintiffs do not disclose when they first learned of Ms. Pollard's medical issues or that she might become unavailable, stating only that July 2 was when they first told Mr. Cooper of the need to reschedule Ms. Pollard's deposition. Pl. App'x at 007. Nor do Plaintiffs identify when or what steps they took to locate, investigate, retain, and prepare a replacement representative. Rather, Plaintiffs state that at some unknown point in time, they "were considering other potential Florida Subclass representatives" while simultaneously attempting to reschedule Ms. Pollard's deposition. ECF 207 at 3. The declaration also does not describe why it took until September, after Mr. Cooper had served its certification opposition, to file the Motion and to first identify Mr. Round. The absence of any account of these efforts is evidence of a lack of diligence. *See Oliver*, 2023 WL 4471937, at *5 (no good cause where plaintiffs "put forward no evidence of any efforts to identify" proposed new representatives and failed to "identify any barriers to identification that were impossible to overcome"); *S.G.*, 333 F.R.D. at 224 (same where plaintiffs "could have begun th[e] process [of identifying a substitute class representative] as soon as they knew it might prove necessary" but failed to do so); *Brewer v. Holder*, 2015 WL 13799993, at *2–3 (D.D.C. Apr. 8, 2015) (same where plaintiffs "provide[d] scant argument as to why they ha[d] been diligent" and were aware for months that the proposed class representative may no longer be viable but "waited until … the very day that they filed a motion for class certification[]

to petition the Court for amendment").

Plaintiffs' reliance on *In re Motor Fuel Temperature Sales Practices Litigation,* 2009 WL 3122501 (D. Kan. Sept. 24, 2009) and *Miller v. Ford Motor Co*., 2025 WL 3751804 (E.D. Cal. Dec. 29, 2025) to justify the need for substitution is misplaced. *See* ECF 207 at 9–10. In *Motor Fuel*, the court found good cause because class counsel raised substitution to the court as soon as counsel learned that the plaintiff would be criminally prosecuted, meaning he was an unsuitable class representative, and the defendants did not assert any resulting prejudice. *Motor Fuel*, 2009 WL 3122501, at *1–2. In *Miller*, the court characterized as reasonable a seven-month search period for substitution of a named plaintiff to represent a state subclass in a product defect case where there was no nationwide putative class in part because the defendant offered only conclusory arguments of resulting prejudice, and the plaintiffs "attested to the efforts" made on substitution. *Miller*, 2025 WL 3751804, at *2.

The circumstances in *Motor Fuel* and *Miller* are absent here. The need for substitution was apparent by no later than early July 2026, but there is nothing in the record on communications with Ms. Pollard to support that this was the first time her availability became known, nor on any efforts to pursue a substitute plaintiff. Leiwant Decl. ¶ 19. Mr. Cooper also opposes substitution because of the resulting prejudice it would face. *See infra* I.C. And, Mr. Cooper has already served its certification opposition before Plaintiffs filed this motion. Leiwant Decl. ¶ 24.

Regardless of the explanation for Ms. Pollard's withdrawal, Plaintiffs have not shown an explanation and the diligence necessary to meet Rule 16(b)'s good cause standard.

### B. Substitution is Not Important because Plaintiffs Have Not Shown That Mr. Round Can Preserve the Florida Subclass.

Under the second *S&W* factor regarding the importance of the substitution, if the Florida subclass is to proceed, it requires a representative who satisfies Rule 23. *Simms v. Jones*, 296

F.R.D. 485, 499 (N.D. Tex. 2013), *aff'd sub nom. Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) ("[E]ach individual subclass is treated as its own class and must meet the requirements of Rule 23."). Rule 23(a) permits only "members of a class" to serve as representative parties, and the Fifth Circuit calls membership in the represented class a "fundamental requirement." Fed. R. Civ. P. 23(a); *Johnson v. Am. Credit Co. of Ga.*, 581 F.2d 526, 532 (5th Cir. 1978). Plaintiffs cannot establish importance because Mr. Round is not a member of the Florida subclass.

Plaintiffs' class certification motion defines the Florida subclass as "[a]ll individuals residing in Florida whose PII was accessed and/or acquired" during the Data Incident. ECF 70 ¶ 452. But Plaintiffs' proposed amended complaint alleges that Mr. Round "currently resides in Oakland, Tennessee," where he moved in November 2025. Pl. App'x at 022 ¶¶ 3–4. Although Plaintiffs allege that Mr. Round previously resided in Florida, the subclass definition requires current residency in Florida, which Mr. Round does not satisfy. The current residency element of the Florida subclass was a deliberate choice by Plaintiffs and is not a requirement that can be cast away. The proposed amended complaint alleges that Mr. Round is at "imminent risk" of future harm; that he "is and will continue to be at increased risk"; and that he has "a continuing interest in ensuring his PII is protected" because it is still in Mr. Cooper's possession. *Id.* at 023–25 ¶¶ 10–19. Mr. Round's allegations are not limited to past conduct while he was in Florida; he is instead pursuing allegations that are both historic and current, including for conduct that occurred and risk that arose when he was no longer a Florida resident. His residency is dispositive of subclass membership, and he cannot satisfy it. *See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am., AFL-CIO v. LTV Aerospace & Def. Co.*, 136 F.R.D. 113, 126 (N.D. Tex. 1991) (denying motion for certification of subclass "for want of a representative plaintiff"); *Johnson v. GEICO Cas. Co.*, 310 F.R.D. 246, 251 (D. Del. 2015) (denying motion to substitute

where proposed representatives "are not, and never have been" members of the certified class), *aff'd*, 672 F. App'x 150 (3d Cir. 2016).

Regardless that Mr. Round is not in the subclass, the asserted need to preserve a subclass cannot satisfy Rule 16(b). If that were the case, the importance factor would override the good cause inquiry whenever a proposed subclass representative became unavailable. Courts have rejected substitution despite the potential loss of a subclass when the remaining factors did not support amendment. *See, e.g., Schechner*, 2017 WL 5589658, at *2–3; *see also Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) (affirming denial of leave where importance favored the movant but timeliness and prejudice did not). And because the potential loss of a subclass flows from Plaintiffs' decision to designate Ms. Pollard as the sole Florida representative, that choice cannot be recast as an important need to override the expired Scheduling Order deadlines. See *In re Enron Corp.*, 610 F. Supp. 2d at 652–55.

Preservation of the subclass is also unnecessary. Plaintiffs seek certification of the Florida subclass only on negligence and breach of contract claims, which claims they also assert for the putative nationwide class. Leiwant Decl. ¶ 29. The remaining named Plaintiffs, nationwide class, and other proposed subclasses would continue unaffected if the Motion is denied. *See* ECF 207 at 12–13; ECF 70 ¶ 137. Plaintiffs' reliance on *Stewart v. Winter*, 669 F.2d 328, 334 (5th Cir. 1982) to suggest substitution is necessary to avoid dismissal of the subclass, ECF 207 at 10, does not change that analysis. *Stewart* addressed what a court should do after denying certification for inadequate representation; it did not address substitution after joinder and amendment deadlines expired and after class certification opposition papers and expert reports were served.

Plaintiffs have not met the importance factor because the proposed substitute falls outside the class definition and he cannot preserve the subclass.

### C. Substitution Would Materially Prejudice Mr. Cooper.

The third *S&W* factor of prejudice to the opposing party weighs heavily against substitution. Mr. Cooper prepared its certification opposition and rebuttal expert reports based on the potential representatives Plaintiffs identified in the Consolidated Complaint, Plaintiffs' motion for class certification, and an extensive discovery record for those representatives. Substituting Mr. Round at this stage would require Mr. Cooper to investigate an entirely new representative on a compressed timeline, after class discovery is already closed, and give a lopsided advantage to Plaintiffs who now know Mr. Cooper's arguments against certification and expert reports.[3]

The scope of discovery required on Mr. Round if substitution were permitted is not insubstantial. For the current named Plaintiffs, including Ms. Pollard, Mr. Cooper analyzed the named Plaintiffs' pleadings, declarations, written responses, document productions, credit and monitoring materials, alleged fraud and account records, breach or dark web notifications, served third-party subpoenas and took deposition testimony from each (except Ms. Pollard). Leiwant Decl. ¶ 25. Mr. Cooper used that record to assess injury, traceability, history of other data breaches and thefts, typicality, and adequacy. *Id.* ¶ 26. Its dark web expert performed named Plaintiff-specific analyses of alleged exposure and alternative sources, while its damages-related expert work addressed individualized differences in injury, risk, causation, and damages. *Id.* ¶ 27. None of that work applies to Mr. Round.

The proposed amended complaint shows the extent of new discovery that would be required if substitution were permitted.[4] It alleges that Mr. Round moved from Florida to Tennessee in November 2025, was a Mr. Cooper customer, received a December 23, 2023 breach

[3] Plaintiffs do not disclose when Mr. Round was identified as a potential substitute, and only disclosed his identify after Plaintiffs were able to review Mr. Cooper's opposition briefing and expert reports.

[4] Mr. Cooper reserves its right to challenge the sufficiency of any amended pleading with respect to Mr. Round.

notification letter, and provided personal information in connection with a mortgage. Pl. App'x at 022–23 ¶¶ 3–9. It further alleges that Mr. Round froze his credit, learned that an email password had been exposed, created a new email address, changed credentials for banking and other accounts, screened unknown calls, received increased spam, and spent time mitigating alleged harm. *Id.* at 023–25 ¶¶ 10–18. Mr. Cooper would need to seek discovery concerning his residence and move; mortgage and servicing history; information associated with his account; other companies and financial institutions with the same information; the dates and reasons for his credit freezes; the source of the reported password exposure; other data breaches and thefts involving his information; and the accounts and credentials changed. Discovery is also required on when counsel identified and retained Mr. Round, his knowledge of this action, and matters bearing on typicality, adequacy, credibility, and potential unique defenses.

Depending on his responses, Mr. Cooper may also need records from third-party credit bureaus; banks, creditors, and payment providers; mortgage originators or prior servicers; email, credit monitoring, or identity theft alert providers; and entities associated with alternative exposures. Only then could counsel and experts assess the effect on standing, traceability, predominance, typicality, adequacy, residence, and subclass membership; perform the same kinds of named Plaintiff-specific exposure, alternative breach, injury, causation, and damages analyses completed for the existing representatives; and then revise Mr. Cooper's already-served opposition and expert work.

Plaintiffs have given no reason to assuage any concerns about how long this additional investigation and discovery would take. Class discovery of the 19 named Plaintiffs took over ten months, numerous deficiency letters, and an order by this Court to compel compliance. Leiwant Decl. ¶¶ 4–7; ECF 200. Even with months of notice, in several instances Plaintiffs were producing

documents just days before their deposition, including in one instance producing 150 pages of documents just 15 hours before a named Plaintiff deposition. *Id.* ¶ 8. Plaintiffs' proposal regarding discovery of Mr. Round allows no meaningful time to test completeness, obtain supplemental responses, subpoena third parties, conduct follow-up discovery, supplement expert work, or revise briefing. Courts routinely deny leave to amend and substitute a new party in the face of this very prejudice. *See, e.g. Walker v. Alta Colls., Inc.*, 2011 WL 13269547, at *2 (W.D. Tex. Aug. 10, 2011) (denying substitution where the defendant would need additional suitability discovery and another certification motion); *Chieftain Royalty Co. v. SM Energy Co.*, 2020 WL 13582565, at *3 (W.D. Okla. Aug. 31, 2020) (same after class discovery and certification briefing because discovery, including depositions, would have to be reopened); *In re Norplant Contraceptive Prods. Liab. Litig.*, 163 F.R.D. 258, 260 (E.D. Tex. 1995) (denying additional representatives after defendants completed class discovery and filed their certification opposition).[5]

The third *S&W* factor of prejudice against Mr. Cooper weighs decisively against permitting substitution.

### D. A Continuance Would Not Eliminate the Prejudice.

The fourth *S&W* factor of the availability of a continuance to cure prejudice likewise weighs against Plaintiffs. The Court has broad discretion to protect its schedule and to decline to give a party a second opportunity to develop its case. *S&W*, 315 F.3d at 537 (recognizing district judges' "power to control their dockets by refusing to give ineffective litigants a second chance to develop their case" (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir.

[5] Plaintiffs' cited authorities involved distinct circumstances that do not apply here and do not absolve the prejudice to Mr. Cooper. *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338 (D. Conn. 2019) and *Colindres v. QuitFlex Manufacturing*, 235 F.R.D. 347 (S.D. Tex. 2006) allowed substitution where the defendants already had deposed the substitutes. *Kinkead*, 330 F.R.D. at 350–51; *Colindres*, 235 F.R.D. at 365 n.8; *see also* ECF 207 at 11, 14. Here, Mr. Cooper has received no discovery from Mr. Round, class discovery is closed, and its opposition and expert reports have been served.

1997))). However, while a continuance is theoretically available in any case, the Fifth Circuit has made clear that the mere possibility of a continuance does not require a court to grant one, particularly where doing so would unnecessarily delay the litigation. *Id.* ("[W]hile a continuance could be granted for additional discovery, the district court found that a continuance would unnecessarily delay the trial.").

A continuance here would defer and compound the prejudice to Mr. Cooper, not eliminate it. The Scheduling Order has already been modified multiple times. Pl. App'x at 003 ¶ 8; *see, e.g.* ECF 141, 157, 163, 199. Reopening representative discovery, permitting supplemental expert work, and requiring Mr. Cooper to re-brief its certification opposition would yield yet another modification of a schedule that the parties and the Court have already extended on multiple occasions. That additional delay would impose further litigation expense on Mr. Cooper and prolonging the resolution of a certification record that Mr. Cooper has already invested substantial resources in developing. *See, e.g.*, *Santacruz v. Allstate Tex. Lloyd's, Inc.*, 590 F. App'x 384, 389 (5th Cir. 2014) (affirming finding of no good cause because "reopening discovery and permitting the refiling of a dispositive motion … the deadlines for which had already passed" would prejudice defendant); *see also Doe v. Waller Indep. Sch. Dist.*, 2024 WL 4729754, at *2 (S.D. Tex. Nov. 8, 2024) (finding plaintiff lacked good cause to amend her complaint after close of discovery and deadline to amend because a continuance would "unnecessarily delay the case and impose excessive costs on both parties in what [was] already a lengthy and costly matter").

All four *S&W* factors thus counsel denial of the Motion because good cause is lacking.

## II. Plaintiffs' Alternative Arguments Cannot Circumvent Rule 16's Good Cause.

### A. Plaintiffs' "Routine Substitution" Authorities Do Not Resolve this Motion.

Plaintiffs invoke a line of cases for the general proposition that substitution of class representatives is "common" and a "routine" feature of class action litigation. But none of those

authorities holds that substitution is automatic, let alone appropriate, under the circumstances present here: the Scheduling Order deadlines have expired, the non-moving party has completed its class certification briefing, unfair prejudice to the defendant would ensue if substitution were permitted, the proposed representative falls outside the class definition, and the evidentiary record on the proposed representative is non-existent.

Plaintiffs rely on *Phillips v. Ford Motor Co.*, 435 F.3d 785 (7th Cir. 2006) for the proposition that substitution is "common" and a "routine" feature of class action litigation. ECF 207 at 7 (quoting *Phillips,* 435 F.3d at 787). But the issue in *Phillips* was whether amending after the passage of the Class Action Fairness Act ("CAFA") constituted "commencement" of a new action sufficient to permit removal. *Phillips,* 435 F.3d at 787. The issue in *Phillips* was a jurisdictional one arising at the pleading stage, long before any scheduling order deadlines, certification briefing, or adequacy of evidence were at issue. The court's passing observation that substitution is "routine" has no bearing on substitution here.

Plaintiffs also cite *Larry James Oldsmobile-Pontiac-GMC Truck Co. v. General Motors Corp.*, 175 F.R.D. 234 (N.D. Miss. 1997) for the proposition that "[i]t is firmly established that where a class action exists, members of the class may intervene or be substituted as named plaintiffs in order to keep the action alive." ECF 207 at 7 (quoting *Larry James*, 175 F.R.D. at 239–40). But *Larry James* arose post-certification, where substitution was sought because the class representative had settled its individual claims against the interests of the class and was no longer an adequate representative. Critically, the court did not grant substitution outright; rather, it held the motion in abeyance pending adequacy discovery. *Larry James*, 175 F.R.D. at 239–40. Here, Plaintiffs have not shown that Mr. Round is an adequate class representative.

Next, Plaintiffs cite *Vuyanich v. Republic National Bank of Dallas,* 82 F.R.D. 420 (N.D. Tex. 1979) for the proposition that courts have allowed additional plaintiffs to represent a class when the named plaintiff does not satisfy Rule 23(a) criteria. ECF 207 at 5 (quoting *Vuyanich*, 82 F.R.D. at 436). *Vuyanich* also arose post-certification; the defendant had moved to decertify or narrow the class, and the plaintiffs proposed the intervention of six additional class members. And before ruling on the proposed intervention, the court had before it a developed evidentiary record on each proposed intervenor, including whether each had exhausted their administrative remedies. *Vuyanich,* 82 F.R.D. at 436–37. That stands in sharp contrast to what Plaintiffs ask of this Court: to approve substitution of Mr. Round with no evidentiary record on his adequacy and when he is not a member of the putative subclass.

Last, Plaintiffs invoke *Usler v. Vital Farms, Inc*., 2022 WL 22782467 (W.D. Tex. Sept. 26, 2022) for the observation that opposition to a substitution motion represented "one of the silliest legal disputes this court has been called upon to resolve in 2022." ECF 207 at 8 (quoting *Usler*, 2022 WL 22782467, at *3). In *Usler*, the court found the substitution to be tardy but non-prejudicial because the case was pre-class certification and several months remained in discovery. Critically, the court conducted no Rule 16(b) analysis, and applied only a Rule 15 amendment standard. *Usler,* 2022 WL 22782467, at *1–3. That makes *Usler* doubly inapplicable here.

**B. Rules 15, 21, 23, and 24 Do Not Provide An End Run Around the Scheduling Order.**

Plaintiffs' reliance on Rules 15, 21, 23, and 24 as alternative vehicles to circumvent the stringent good cause requirement under Rule 16(b) gets them nowhere.

Rule 15(a) provides that leave to amend "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But the Fifth Circuit has made clear that Rule 15(a)'s liberal standard does not apply independently when, as here, the proposed amendment comes after the Scheduling

Order's deadlines for joinder and amendment have expired. *S&W*, 315 F.3d at 535–36 ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."). Because Plaintiffs have not demonstrated good cause under Rule 16(b), the Court need not reach Rule 15(a) at all. *See id.; see also Fahim*, 551 F.3d at 348.

Rule 21 permits the Court to add or drop parties at any time. Fed. R. Civ. P. 21. However, the "at any time" language does not displace Rule 16(b) when the requested joinder requires modification of an expired scheduling order deadline. *McCombs v. Allwaste Recovery Sys., Inc.*, 1999 WL 102816, at *1 (N.D. Tex. Feb. 24, 1999) ("The court considers the more liberal standards of Rule 15(a) or Rule 21 only if the movant satisfies the requirements of Rule 16(b).")

Rule 23(d) is also of no aid to Plaintiffs' effort at substitution. The rule generally empowers the court to address procedural matters, including the designation of additional class representatives. Fed. R. Civ. P. 23(d). But Plaintiffs fail to cite a single case supporting the use of Rule 23 to bypass the threshold Rule 16(b) good cause requirement. *See generally* ECF 207. Their sole Rule 23 authority, *Arevalo v. Fidelity National Financial, Inc.*, 2007 WL 9712070 (W.D. Tex. Feb. 14, 2007), involved a motion to amend pleadings filed before class certification discovery commenced. *Arevalo,* 2007 WL 9712070, at *2; *see also* ECF 207 at 6. *Arevalo* also predates the line of Fifth Circuit authority establishing that Rule 16(b) must be met first before Plaintiff can seek leave to amend.

Rule 24 lays out the requirements for both mandatory and permissive intervention. Fed. R. Civ. P. 24. However, regardless of the form, Rule 24 requires that a motion be timely. *See id.* (a)(1) ("On timely motion, the court must permit anyone to intervene …"), (b)(1) ("On timely motion, the court may permit anyone to intervene …"). Mr. Round's attempt to intervene is

untimely because the deadline to amend the pleadings occurred over 13 months ago. *Alex A. ex rel. Smith v. Edwards*, 2023 WL 2700712, at *4–5 (M.D. La. Mar. 29, 2023).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to substitute Ms. Pollard with Mr. Round.

If the Court is not inclined to deny the Motion at this time, the Court should in the alternative hold the Motion in abeyance until following the Court's decision on class certification. The Court could then determine whether the remainder of the case would proceed in a posture in which substitution may be necessary and procedurally proper, and assess Plaintiffs' request for relief at that time.

Dated: October 1, 2026

Respectfully submitted,

*/s/ W. Kyle Tayman*

**W. Kyle Tayman** (*pro hac vice*)
ktayman@goodwinlaw.com
**Christina Hennecken** (*pro hac vice*)
chennecken@goodwinlaw.com
**Collin Grier** (*pro hac vice*)
cgrier@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC 20036
T. 202.346.4245
F. 202.204.7309

**Allison J. Schoenthal** (*pro hac vice*)
aschoenthal@goodwinlaw.com
**Molly L. Leiwant** (*pro hac vice*)
mleiwant@goodwinlaw.com
**Sophie Barnett** (*pro hac vice*)
sbarnett@goodwinlaw.com
The New York Times Building
620 Eighth Avenue
New York, New York 10018
T. 212.459.7183
F. 212.937.3850

**Thomas G. Yoxall**
Texas Bar No. 00785304
tyoxall@troutman.com
**Roger B. Cowie**
Texas Bar No. 00783886
rcowie@troutman.com
**M. Taylor Levesque**
Texas Bar No. 24107296
taylor.levesque@troutman.com
**TROUTMAN PEPPER LOCKE**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T. 214.740.8000
F. 214.740.8800

*Attorneys for Mr. Cooper Group, Inc. and Nationstar Mortgage, LLC d/b/a Mr. Cooper*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2026, a copy of the foregoing was served by electronic mail on all counsel of record.

*/s/ W. Kyle Tayman*
W. Kyle Tayman