**IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| JENNIFER CABEZAS *et al.*, *individually and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>MR. COOPER GROUP, INC. and NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,<br><br>Defendants. | Case No. 3:23-CV-02453-N |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SUBSTITUTE CLASS REPRESENTATIVE**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........ i

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 1

A. The Requested Substitution Is Routine, Not "Unprecedented" as Mr. Cooper Claims...... 1

B. Mr. Cooper Fails to Overcome the Record Supporting Rule 16 Good Cause to Modify the Scheduling Order Deadlines to Allow Substitution. ........ 2

*1. The record confirms that the timing of Plaintiffs' substitution request is reasonable and demonstrates Plaintiffs' diligence.* ........ 2

*2. Mr. Cooper's rationale for opposing substitution only underscores the importance of modifying the relevant deadlines.* ........ 6

*3. Any minimal prejudice to Mr. Cooper is the self-inflicted result of its own deliberate strategic decisions.* ........ 8

*4. This is precisely the situation in which a modest continuance would cure the prejudice claimed by Mr. Cooper.* ........ 9

C. Mr. Cooper All But Concedes That, If There Is Good Cause to Modify the Scheduling Order under Rule 16, Then the Requested Substitution Is Proper Under Any of the Federal Rules Invoked by Plaintiffs. ........ 10

III. CONCLUSION ........ 10

## I. INTRODUCTION

Contrary to Mr. Cooper's claim that Plaintiffs' substitution request is "unprecedented," courts routinely approve similar requests in class action litigation. Nothing in Mr. Cooper's opposition brief refutes the record establishing good cause to modify the Scheduling Order here, and Mr. Cooper does not and cannot dispute that, once good cause is established, substitution is procedurally proper under any of the Federal Rules cited by Plaintiffs in their Motion. Plaintiffs' Motion to Substitute Class Representative, Doc. 207, should be granted.

## II. ARGUMENT

### A. The Requested Substitution Is Routine, Not "Unprecedented" as Mr. Cooper Claims.

Substitution here would not be "unprecedented," as Mr. Cooper decries. Doc. 209 at 6. Courts routinely exercise their discretion to allow class representative substitution in a wide variety of contexts and stages of litigation. *See* Doc. 207 at 6–14, 16–17. Courts have allowed substitution before the motion for class certification had been filed, *id.* at 11 (citing *Miller v. Ford Motor Co.*, No. 2:20-CV-01796-DAD-CKD, 2025 WL 3751804, at *4 (E.D. Cal. Dec. 29, 2025)); after the class certification motion was filed but before defendants filed their response, *id.* at 17 (citing *Shupe v. Rocket Companies, Inc.*, 348 F.R.D. 431, 439 (E.D. Mich. 2024)); after the opposition was filed but before class certification briefing was complete, *id.* at 16 (citing *Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 365 n.8 (S.D. Tex. 2006)); after the class certification motion and response were filed and after the fairness hearing was scheduled but before the hearing was held, *id.* at 8 (citing *Arevalo v. Fid. Nat'l Fin., Inc.*, No. SA-06-CA-0265-OG, 2007 WL 9712070, at *2 (W.D. Tex. Feb. 14, 2007)); and after summary judgment motions had been filed, *id.* (citing *Verde Mins., LLC v. Burlington Res. Oil & Gas Co., LP*, 360 F. Supp. 3d 600, 626 (S.D. Tex. 2019)).

The timing and context of Plaintiffs' requested substitution thus fits squarely within this wide range of substitutions deemed appropriate in Plaintiffs' cited cases. *See also McKinney v. Bayer Corp.*, No. 1:10-CV-00224, 2011 WL 2553304, at *2 (N.D. Ohio June 28, 2011) (finding good cause to modify scheduling order to permit class representative substitution for named plaintiff who "says he no longer wishes to proceed as putative class representative" because it would avoid a "potential scenario that the Court, after conducting a class certification hearing, must allow for additional discovery and briefing, and hold a second hearing, to address [proposed substitute's] adequacy as class representative" and "given that the Plaintiff says it will make [proposed substitute] immediately available for discovery"). Allowing substitution at this juncture in the case would be entirely precedented.

### B. Mr. Cooper Fails to Overcome the Record Supporting Rule 16 Good Cause to Modify the Scheduling Order Deadlines to Allow Substitution.

None of Mr. Cooper's arguments defeat the record laid out in Plaintiffs' Motion supporting good cause under Rule 16(b) to modify the amendment and joinder deadlines in the Class Certification Scheduling Order to allow substitution of Plaintiff Pollard with Mr. Round. All the relevant factors are satisfied, and nothing in Mr. Cooper's opposition refutes Plaintiffs' assertions.[1]

#### *1. The record confirms that the timing of Plaintiffs' substitution request is reasonable and demonstrates Plaintiffs' diligence.*

Plaintiffs have provided a reasonable explanation for the timing of their request for class representative substitution. Doc. 207 at 3–6, 11; Doc. 208 at Appx. 003–006. In the face of this

[1] As an initial matter, Mr. Cooper argues that Plaintiffs "rely on outdated authority" to support good cause for modifying the Scheduling Order to permit substitution. Doc. 209 at 11 n.2. Not so. Plaintiffs cite the same Rule 16 good cause standard and factors that Mr. Cooper does. *Compare* Doc. 207 at 8, 10 (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003); *Banks v. Spence*, 114 F.4th 369, 371 (5th Cir. 2024)) *with* Doc. 209 at 10–11 (citing same authority).

explanation, Mr. Cooper accuses Plaintiffs of "seeking to reverse the consequences of its own deliberate strategic decisions." Doc. 209 at 11. First, Plaintiff Pollard's health issues—and the timing of those issues—are not deliberate strategic decisions.[2] Even the authorities Mr. Cooper cites in its own opposition brief acknowledge that "under Rule 16, Lead Plaintiff must demonstrate" only "that it could not have met the deadline in the controlling scheduling order for amending its complaint . . . despite its diligence." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 610 F. Supp. 2d 600, 652 (S.D. Tex. 2009). *See* Doc. 209 at 12. That is precisely what Plaintiffs have done here. As explained in Plaintiffs' Motion, the deadlines to amend pleadings and join parties expired within two months of the court's initial Class Certification Scheduling Order, and it would be nearly a year afterward that Plaintiff Pollard's health issues began interfering with her ability to sit for her deposition. Doc. 207 at 11.

Second, the Court should reject Mr. Cooper's argument that Plaintiffs "have not demonstrated diligence after the need for substitution became apparent." Doc. 209 at 11. As explained in Plaintiffs' Motion, Declaration, and Exhibits, Plaintiffs acted diligently to consider

[2] The cases Mr. Cooper cites to paint Plaintiffs' request as a strategic ploy, *see* Doc. 209 at 12–13, have nothing to do with the facts of this case. *See In re Enron*, 610 F. Supp. 2d at 652–54 (denying leave to amend complaint out of time to plead modified liability theory long after class certification decided and summary judgment fully briefed and supplemented); *Gordon*, 333 F.R.D. at 224 (leave to add—not substitute—plaintiffs was requested after class had been certified and therefore "awaiting the class certification ruling before raising this issue" may have been "a strategic decision"); *Estrada v. Martin Marietta Materials, Inc.*, No. 120CV00375REBSKC, 2020 WL 9424368, at *3 (D. Colo. Oct. 5, 2020) (denying leave to amend out of time to add loss of consortium claim, where plaintiff admitted "strategic decision" not to include such claim in original complaint even though circumstances supporting the claim "were well-known to Plaintiff when he first filed his case"), *report and recommendation adopted*, No. 20-CV-00375-REB-SKC, 2020 WL 9424260 (D. Colo. Oct. 27, 2020); *Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 590 F. Supp. 2d 1093, 1102 (N.D. Iowa 2008) (denying leave to amend out of time to add inequitable conduct claim, were plaintiff "admit[ted] that it considered asserting [the] claim earlier in the litigation, before the deadline for amendments, but made a tactical decision not to assert the claim at that time, because of the difficulties of proving it").

alternative Florida Subclass representatives and promptly proposed substitution and related discovery and class certification scheduling extensions to Mr. Cooper once the need for substitution arose. Doc. 207 at 3–6, 11–13; Doc. 208 at ¶¶ 19–33, Appx. 004–006. Plaintiffs' Motion is also clear that "[i]n an abundance of caution, Plaintiffs also were considering other potential Florida Subclass representatives should substitution prove necessary." Doc. 207 at 5. On August 14, 2026, the day the Parties met and conferred on substitution, "Plaintiffs . . . informed Mr. Cooper that a new Plaintiff was ready to replace Plaintiff Pollard." Doc. 207 at 5; Doc. 208 at ¶ 28, Appx. 005.[3]

Third, the Court should reject what Mr. Cooper now characterizes as Plaintiffs' "silen[ce] on the key facts" relevant to the diligence inquiry, demanding now (for the first time) to know "when they first learned of Ms. Pollard's medical issues" and the "steps they took to locate, investigate, retain, and prepare a replacement representative." Doc. 209 at 14. Plaintiffs provided Mr. Cooper with more than sufficient information to evaluate whether to consent to the substitution. In any event, this additional information would not alter the diligence analysis.

[3] The cases Mr. Cooper relies on to attack Plaintiffs' diligence, *see* Doc. 209 at 13–14, are inapposite. *See Oliver v. Am. Express Co.*, No. 19-CV-566-NGG-SJB, 2023 WL 4471937, at *5 (E.D.N.Y. July 11, 2023) (finding lack of diligence where "[t]he crux of Plaintiffs' Rule 16 argument is that finding suitable class representatives is challenging and time-consuming," but "Plaintiffs could and should have uncovered—at the very latest, by May 2022—any issues with the existing representatives' capacity to serve as class representatives" and yet failed "to move to amend until November 7, 2022, without explanation"); *Schechner v. Whirlpool Corp.*, No. 2:16-CV-12409, 2017 WL 5589658, at *2 (E.D. Mich. Nov. 21, 2017) (finding lack of diligence where plaintiff initially based substitution on unwillingness to allow home inspection but, on reply, disclosed medical issues for first time: "[a]lthough legitimate medical conditions would usually justify delay, the delay here appears to be caused by a lack of communication between Plaintiffs' counsel and [the Plaintiff] rather than the medical condition itself"); *S.G. by & through Gordon v. Jordan Sch. Dist.*, 333 F.R.D. 220, 224–25 (D. Utah 2019) (denying leave to amend complaint out of time to add plaintiffs and modify request for relief, where leave was requested after class had been certified, fact discovery had closed, and plaintiffs had moved for summary judgment).

Tellingly, Mr. Cooper does not argue that it would have agreed to the substitution if this additional information had been disclosed.

Plaintiffs were clear with Mr. Cooper: as soon as Plaintiff Pollard's medical issues presented an issue with her deposition attendance, Plaintiffs alerted Mr. Cooper; Plaintiff Pollard diligently attempted to work through these issues and reschedule her deposition; during this time, out of caution, Plaintiffs also evaluated other potential Florida Subclass representatives; and once Plaintiff Pollard decided she could no longer participate in the case due to these issues, Plaintiffs alerted Mr. Cooper to this fact and made a proposal; after a thorough meet and confer and specific substitution proposal by Plaintiffs, Mr. Cooper refused. Mr. Cooper cannot now attack Plaintiffs' diligence by arguing they did not supply information that Mr. Cooper never asked for and that would not have made a difference in Mr. Cooper's decision. And Plaintiffs told Mr. Cooper in no uncertain terms that they would have no choice but to file a contested motion if Mr. Cooper refused to agree to Plaintiffs' proposal. Doc. 208 at ¶¶ 25–32, Appx. 005, Ex. D at Appx. 013–016.[4] Finally, Mr. Cooper's other attacks—that Plaintiffs "proceed[ed] with a single Florida representative" and filed a protective suit in California asserting "only a California subclass," Doc. 209 at 12, are wholly irrelevant to whether Plaintiffs have acted diligently through the litigation and diligently pursued substitution of Plaintiff Pollard once it became necessary.[5]

---

[4] Mr. Cooper also argues that "[a]lthough the Scheduling Order was modified several times . . . the joinder and amendment deadlines were not moved" and "Plaintiffs never sought an extension of either deadline." Doc. 209 at 8, 12. This argument ignores the reality that there was no reason to modify these deadlines at the various times when certain other deadlines were modified. Mr. Cooper admits as much. Doc. 209 at 6 (conceding that "Ms. Pollard's reported health issues may explain why Plaintiffs did not anticipate this problem earlier").

[5] Mr. Cooper accuses Plaintiffs of "an attempt at forum shopping amid fear this Court would deny class certification," pointing to the *Snyder* action currently pending in the U.S. District Court for the Central District of California. Doc. 209 at 12. *See also* Doc. 201 (Plaintiffs' Notice of Related Case disclosing *Snyder* action); Doc. 204 (Joint Stipulation Informing Court of Related Case).

***2. Mr. Cooper's rationale for opposing substitution only underscores the importance of modifying the relevant deadlines.***

Couched as arguments on the "importance" factor of the Rule 16 good cause analysis, Mr. Cooper lodges attacks on Mr. Round's adequacy as a class representative. *See* Doc. 209 at 15–17. But the analysis of good cause to modify scheduling deadlines is not a test on the merits or whether a given proposed amendment is futile under Rule 15. These arguments also betray Mr. Cooper's purpose in opposing substitution: defeating certification of the Florida Subclass in the event that the Court declines to certify a nationwide class without Plaintiffs having the opportunity to put forth a proposed Florida Subclass representative willing and able to participate in the case.[6] Even if the Court were to decline certification of the Florida Subclass for lack of an adequate class representative, the typical approach would be to afford Plaintiffs an opportunity to find one.

If anything, Mr. Cooper concedes just how important the proposed amendment is: "[I]f the Florida subclass is to proceed, it requires a representative who satisfies Rule 23." Doc. 209 at 15. And Mr. Cooper's argument that Plaintiffs "have not shown that Mr. Round is even a member of the subclass he proposes to represent," Doc. 209 at 7, is inaccurate. As shown in Plaintiffs' proposed First Amended Consolidated Class Action Complaint, Mr. Round was a resident of

---

Aside from being out of bounds, this accusation is entirely irrelevant to the Rule 16 good cause inquiry.

[6] While Mr. Round is a member of the Florida Subclass, his residency is not relevant to the Rule 16 good cause analysis, and the cases Mr. Cooper cites on this point are inapposite. *See* Doc. 209 at 16–17. *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am., AFL-CIO v. LTV Aerospace & Def. Co.*, 136 F.R.D. 113 (N.D. Tex. 1991), involved a decision on class certification, not named plaintiff substitution, and the court partially denied certification because both proposed representatives of a subclass of women denied employment by the defendant had actually been *hired* by the defendant. *Id.* at 127. *Johnson v. GEICO Cas. Co.*, 310 F.R.D. 246, 251 (D. Del. 2015), involved a request to substitute two healthcare *providers* as representatives of a class of GEICO *policyholders* whose insurance claims had been denied, a class in which providers did not fit. Here, in stark contrast, Mr. Cooper does not dispute that Mr. Round alleges he was a victim of the Data Breach, just as the other class representatives are.

Florida at the time of the Data Breach. Doc. 208 at ¶¶ 34–36, Appx. 006, Ex. E at Appx. 022–025. This argument also puts the cart before the horse. Any challenge to Mr. Round's membership in the Florida Subclass or his adequacy as class representative should be made in opposition to class certification, *after substitution*. Rule 16 good cause to modify a schedule does not dictate whether substitution itself is proper. The Court should ignore Mr. Cooper's invitation to play semantic games, *see* Doc. 209 at 16, when both the operative and proposed amended complaints plainly allege a Florida Subclass definition including those, like Mr. Round, residing in Florida at the relevant time: the time of the Data Breach. [7]

Mr. Cooper also attempts to undercut the importance of the substitution by vaguely arguing that "[t]he Florida subclass was . . . never critical to Plaintiffs' case." Doc. 209 at 12. Not only is this inaccurate, but it is also wholly irrelevant to whether the importance factor favors good cause to modify the schedule. It is the fact that the Florida Subclass needs a representative—not whether that Subclass is "critical" to Plaintiffs' case compared to the Class or other Subclasses—that makes the substitution important enough to show good cause to modify the amendment and joinder deadlines. The Court should also reject Mr. Cooper's argument that "the asserted need to preserve a subclass cannot satisfy Rule 16(b)" because otherwise "the importance factor would override the

[7] The cases Mr. Cooper cites for its position that "[c]ourts have rejected substitution despite the potential loss of a subclass," Doc. 209 at 17, are distinguishable. In *Schechner*, 2017 WL 5589658, at *2–3, unlike here, it was unclear whether the named plaintiff seeking substitution actually wanted to withdraw or continue as a class representative. *Id.* (finding it "unclear whether and on what conditions Bliss seeks to withdraw or dismiss her claims" and granting named plaintiff "opportunity to file a clearer withdrawal after reflecting on whether she wants to continue"). The decision affirmed in *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344 (5th Cir. 2008), found there was not good cause to modify the amendment deadline to *add a new claim* after the plaintiff "offered no explanation for her failure to timely move for leave" and shortly before the close of merits discovery. *Id.* at 347–48. *In re Enron Corp.* similarly involved a plaintiff seeking to add a new claim—*after* the close of discovery. 610 F. Supp. 2d at 652–55. These cases have nothing to do with the Florida Subclass Plaintiffs seek to preserve through the requested substitution.

good cause inquiry whenever a proposed subclass representative became unavailable." Doc. 209 at 17. This argument proves too much. Were the Court to follow it, the need to preserve a subclass would *never* support good cause—an outcome equally illogical to the straw man Mr. Cooper attempts to prop up.[8] The importance factor is satisfied here.

#### ***3. Any minimal prejudice to Mr. Cooper is the self-inflicted result of its own deliberate strategic decisions.***

Any prejudice to Mr. Cooper resulting from substitution at this juncture would be minimal, especially considering the stage of the case, where class certification has not yet been fully briefed—let alone decided or even filed with the Court—and merits discovery has not yet begun. And while Mr. Cooper bemoans the timing of Plaintiffs' Motion, being filed after Mr. Cooper served its opposition to class certification, Plaintiffs approached Mr. Cooper weeks before then and made a specific proposal of substitution, expedited discovery, and reasonable class certification scheduling extensions (which would include the opposition deadline) to accommodate the substitution. Indeed, this only demonstrates Plaintiffs' good faith attempt to meet and confer and *mitigate* any prejudice that substitution might cause to Mr. Cooper. It was Mr. Cooper's own deliberate strategic decision to reject Plaintiffs' proposal that caused the prejudice Mr. Cooper now claims. All twenty putative class representatives served discovery responses, produced documents, and complied with the Court's order on Mr. Cooper's motion to compel. Nineteen out of twenty—all but Plaintiff Pollard—testified at deposition. That Mr. Cooper would seek discovery from one additional Plaintiff, Mr. Round, were he substituted as class representative, does not amount to overriding prejudice. *See Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 350 (D. Conn. 2019)

---

[8] Mr. Cooper also argues that substitution is not important because it is "unnecessary," reasoning that "[t]he remaining named Plaintiffs, nationwide class, and other proposed subclasses would continue unaffected if [substitution] is denied." Doc. 209 at 17. Mr. Cooper's reasoning here is not entirely clear to Plaintiffs. As Plaintiffs argued in their Motion, substitution is important to preserving the Florida Subclass. Doc. 207 at 12.

("[D]elay and litigation expense alone do not constitute sufficient prejudice."). The cases Mr. Cooper cites do not hold otherwise.[9]

#### *4. This is precisely the situation in which a modest continuance would cure the prejudice claimed by Mr. Cooper.*

The prejudice Mr. Cooper claims would result from substitution—obtaining discovery and incorporating Mr. Round into its expert reports and opposition to class certification (Doc. 209 at 13–15)—are easily curable through a modest continuance. A continuance is what Plaintiffs offered Mr. Cooper in the first place and would serve to remedy any prejudice to Mr. Cooper, particularly considering the Parties have not yet filed their class certification papers with the Court and possibly will not do so for the next several months. *See* Doc. 210 (Joint Motion to Modify Class Certification Scheduling Order to incorporate *Daubert* motions into the Parties' class certification submissions). Mr. Cooper has not shown that the continuance factor defeats Rule 16 good cause.

[9] The cases Mr. Cooper cites involve far more prejudicial circumstances than Mr. Cooper claims here. *Walker v. Alta Colls., Inc.,* 2011 WL 13269547 (W.D. Tex. Aug. 10, 2011) did not involve Rule 16 good cause at all. Instead, the court found a motion to intervene as "untimely" for Rule 24 purposes because class certification had been denied months before, and the intervenor "knew or should have known of the possible need to intervene before the denial of the motion to certify the class." *Id.* at *2. This suggests that intervention would have been timely in precisely the circumstances presented here: while the class certification motion was still pending and *after* the defendants had submitted their opposition. Similarly, in *Chieftain Royalty Co. v. SM Energy Co.*, 2020 WL 13582565, at *3 (W.D. Okla. Aug. 31, 2020), the plaintiff sought to add another class representative "in response to Defendant's challenges to Plaintiff's adequacy and typicality in its response to Plaintiff's motion for class certification." *Id.* at *3. Here, of course, Plaintiff Pollard's medical issues arose before—not in response to—Mr. Cooper's opposition to class certification, and Plaintiffs proposed her substitution almost a month before the opposition was due. *In re Norplant Contraceptive Prods. Liab. Litig.*, 163 F.R.D. 258 (E.D. Tex. 1995), also involved the addition of plaintiffs—not substitution where there would otherwise be no proposed representative for a class or subclass—and that case involved consolidated products liability proceedings, which the court could not allow "to become protracted." *Id.* at 260.

### C. Mr. Cooper All But Concedes That, If There Is Good Cause to Modify the Scheduling Order under Rule 16, Then the Requested Substitution Is Proper Under Any of the Federal Rules Invoked by Plaintiffs.

Mr. Cooper barely attempts to dispute that substitution would be proper under Rules 15, 21, 23, or 24, if there were good cause to amend the Scheduling Order's amendment and joinder deadlines. *See* Doc. 209 at 23–25. Rather, Mr. Cooper focuses almost exclusively on arguing that Rule 16 good cause applies to each of those rules. But Plaintiffs do not rely on Rules 15, 21, 23, and 24 simply "as alternative vehicles to circumvent" or to "bypass" Rule 16(b)'s good cause requirement. Doc. 209 at 23–24. These are the rules allowing substitution of named plaintiffs in a class action, and Plaintiffs' Motion explains why they meet Rule 16 good cause to modify the pertinent deadlines. *See* Doc. 207 at 8, 10–13.[10] With good cause established, substitution is proper here.

## III. CONCLUSION

For the foregoing reasons, and those explained in Plaintiffs' Motion, Doc. 207, Plaintiffs' Motion to Substitute Class Representative should be granted, and Plaintiff Pollard should be replaced with Mr. Round.

---

[10] Finally, if the Court is inclined to grant Plaintiffs' Motion, the Court should not "hold the Motion in abeyance until following the Court's decision on class certification," as Mr. Cooper invites. Doc. 209 at 25. The Court should instead grant the motion, and Mr. Round should be a part of the Court's class certification decision.

Dated: October 15, 2026

Respectfully submitted,

/s/ *Joe Kendall*
Joe Kendall (Texas Bar No. 11260700)
**KENDALL LAW GROUP, PLLC**
3811 Turtle Creek, Suite 825
Dallas, TX 75219
Tel.: (214) 744-3000
Fax: (877) 744-3728
jkendall@kendalllawgroup.com

Bruce W. Steckler (Texas Bar No. 00785039)
**STECKLER WAYNE**
**& LOVE, PLLC**
12720 Hillcrest Suite 1045
Dallas, TX 75230
Tel: (972) 387-4040
bruce@swclaw.com

Norman E. Siegel (*pro hac vice*)
Benjamin J. Stueve (*pro hac vice*)
Tanner J. Edwards (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com
ben.stueve@stuevesiegel.com
tanner@stuevesiegel.com

Gary M. Klinger (*pro hac vice*)
Alexander E. Wolf (Texas Bar No. 24134558)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866-252-0878
gklinger@milberg.com
awolf@milberg.com

John A. Yanchunis (Texas Bar No. 22121300)
Ronald Podolny
**MORGAN & MORGAN**
**COMPLEX LITIGATION**
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Tel: (813) 275-5272

jyanchunis@forthepeople.com
ronald.podolny@forthepeople.com

*Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I certify that the foregoing was served on October 15, 2026, upon all counsel of record via the Court's Electronic Case Filing system.

/s/ *Bruce W. Steckler*